**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

DEREK AMARAL, Individually and
on behalf of all Current and former
similarly-situated employees of Defendants
*Plaintiffs*,

v.                                                                    C.A. No. _____

ADVANTAGE WEATHERIZATION, INC.,
and JOHN KELLY,
*Defendants*.

## <u>COMPLAINT</u>

### I.  PARTIES, JURISDICTION, AND VENUE

1.      Derek Amaral is a resident and domiciliary of Fall River, Massachusetts.

2.      Advantage Weatherization, Inc. ("Advantage") is a Domestic Profit Corporation

located in Quincy, Massachusetts.

3.      At all times relevant to this action, Mr. Amaral worked throughout Massachusetts

out of Advantage's Brockton, Massachusetts, location.  At all times relevant to

this action, Mr. Amaral handled products and provided services in the stream of

intrastate commerce.

4.      Defendant John Kelly ("Kelly") is a resident of 425 Canton Avenue, Milton,

Massachusetts.

5.      At all times relevant to this Complaint, Kelly has been President and a director of

Advantage.

6.    This Court has jurisdiction over this matter according to 28 U.S.C. § 1331.

7.    This Court has personal jurisdiction over Advantage because the company does significant business in Massachusetts, can be served in Massachusetts, is registered with the Massachusetts Secretary of State, maintains an agent for service of process in Massachusetts, and committed most, if not all, the acts giving rise to Mr. Amaral's claims in Massachusetts. Advantage is headquartered in Massachusetts.

8.    This Court has personal jurisdiction over defendant Kelly because he works in Massachusetts, can be served in Massachusetts, committed the acts giving rise to these claims in Massachusetts, and, upon information and belief, resides in Massachusetts.

9.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because (1) it is the Court for the judicial district in which all of the events or omissions giving rise to the claim occurred; (2) it is a judicial district in which any defendant may be found; (3) and it is a judicial district where all Defendants reside.

10.   Over 90 days have passed since Mr. Amaral filed a complaint of defendants' failure to pay wages with the Massachusetts Office of the Attorney General.

## II.  FACTS

11.   Mr. Amaral was hired by Advantage on June 27, 2010, as a Weatherization Worker and assigned to work from its Brockton, Massachusetts location.

12.   When Mr. Amaral was hired, his pay rate was $20.00 per hour.

13.   In approximately September, 2010, Mr. Amaral's straight time wage became $20.30 per hour, which he was paid until termination.

14.     At all times relevant to this Complaint, Mr. Amaral was qualified for his position.

15.     On September 10, 2010, the Residential Weatherization Local Union 7 ("Union") was organized.

16.     Mr. Amaral's employment was governed by a collective bargaining agreement which established his hourly wage to be $22.00 an hour (plus payment of a certain sum into a health & wellness fund and plus a payment of union dues).

17.     Mr. Amaral's pay rate should have increased to $22.00 per hour once the Union was organized.

18.     Mr. Amaral's pay rate did not change from $20.30 per hour after the Union was organized.

19.     Mr. Amaral's work was funded, at least in part, by funds from the American Recovery and Reinvestment Act of 2009 ("ARRA").

20.     Jobs funded by the ARRA required payment of prevailing wage under the Davis Bacon Act.

21.     Mr. Amaral realized shortly after he was hired that he was usually not paid any wage for hours he worked over forty (40) hours per week.

22.     Advantage supervisors Joe Lambalot and Brian Machado required Mr. Amaral, and several other peers he worked with, to report to work, load an Advantage truck with provisions and be transported to a work site prior to the start of work at the job site.

23.     Employees were not paid anything for this time.

24.     Defendant Kelly knew this was occurring and ratified it.

25.     After the end of their work at the job site, Advantage managers Joe Lambalot and

        Brian Machado required Mr. Amaral, and several other peers he worked with, to

        load the Advantage truck, travel back to headquarters, and unload the truck.

26.     Employees were not compensated for this time.

27.     Defendant Kelly knew this was occurring and ratified it.

28.     Between May and August, 2011, Mr. Amaral regularly complained to Advantage

        managers Scott Gusterson and Joe Lambalot, and Defendant John Kelly about

        Advantage's illegal practice of not paying Mr. Amaral wages or overtime for

        overtime hours worked, a violation of the Fair Labor Standards Act and state law

        equivalents.

29.     On these occasions, Mr. Amaral complained to Advantage managers Scott

        Gusterson and Joe Lambalot, and Defendant John Kelly about Defendants' illegal

        practice of not paying Mr. Amaral overtime wages for work suffered or permitted

        over the 40-hour mark each workweek.

30.     On these occasions, Mr. Amaral complained to Advantage managers Scott

        Gusterson and Joe Lambalot, and Defendant John Kelly about Defendants' illegal

        practice of not paying Mr. Amaral wages for work suffered or permitted during

        work breaks as required under state law.

31.     On these occasions, Mr. Amaral complained to Advantage managers Scott

        Gusterson and Joe Lambalot, and Defendant John Kelly about Defendants' illegal

        policy of not paying Mr. Amaral any wage for work suffered or permitted by

        Advantage before the beginning of Mr. Amaral's shift.

32.     On these occasions, Mr. Amaral complained to Advantage managers Scott

      Gusterson and Joe Lambalot, and Defendant John Kelly about Defendants' illegal

      policy of not paying Mr. Amaral any wage for work suffered or permitted by

      Advantage after the end of Mr. Amaral's shift.

33.     Co-workers witnessed some of Mr. Amaral's complaints to Advantage and Mr.

      Kelly.

34.     In approximately October, 2010, Mr. Amaral submitted a timecard indicating all

      the hours he actually worked that week.

35.     When Mr. Lambalot saw the timecard, he changed it to reflect fewer hours.

36.     Mr. Lambalot told Mr. Amaral that Defendants were not going to pay Mr. Amaral

      more than 8 hours a day regardless of how many hours Mr. Amaral and his co-

      workers worked.

37.     Defendants regularly changed Mr. Amaral's timecards when Mr. Amaral put

      more than 8 hours a day on his timesheets.

38.     Defendants regularly changed the timecards of similarly-situated co-workers

      when said similarly-situated co-workers put more than 8 hours a day on their

      timesheets.

39.     In the summer of 2011, Mr. Amaral drafted and subsequently distributed to co-

      workers in his Fair Labor Standards Act classification a leaflet which outlined

      workers right to wages and defendants' illegal non-payment of wages for work

      beyond forty hours per week.

40.     On June 30, 2011, Mr. Amaral filed a complaint with the Massachusetts Office of

      the Attorney General for non-payment of wages.

41.   Shortly after Mr. Amaral distributed the leaflet and filed a complaint with the Massachusetts Office of the Attorney General for non-payment of wages, defendants gave Mr. Amaral less desirable work assignments unrelated to his previous weatherization work.

42.   Mr. Amaral's complaints to Advantage's leadership were not addressed until Advantage issued a statement on September 17, 2010, stating that it intended to follow guidelines written into the Laborers' New England Region Residential Weatherization Agreement.

43.   These guidelines purport to follow state and federal law concerning meal break and overtime requirements.

44.   On October 31, 2011, Mr. Amaral met with a United States Department of Labor Investigator to complete an affidavit regarding Advantage's non-payment of wages.

45.   In November, 2011, Mr. Amaral again informed Mr. Kelly about his concerns regarding Advantage's non-payment of wages and overtime.

46.   On December 8, 2011, Mr. Amaral was terminated.

47.   For the week ending July 3, 2010, Mr. Amaral worked fifty-five hours.

48.   For the week ending July 3, 2010, Mr. Amaral was paid for forty hours.

49.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

50.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

51.   During this week, similarly-situated co-workers were not paid any wage for any time worked over the 8-hour-per-day mark..

52.     For the week ending July 10, 2010, Mr. Amaral worked thirty-three hours.

53.     For the week ending July 10, 2010, Mr. Amaral was paid for twenty-four hours.

54.     For this week, Mr. Amaral was not paid straight time or overtime for 9.00 hours.

55.     During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

56.     During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

57.     For the week ending July 17, 2010, Mr. Amaral worked fifty-five hours.

58.     For the week ending July 17, 2010, Mr. Amaral was paid for forty hours.

59.     For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

60.     During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

61.     During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

62.     For the week ending July 24, 2010, Mr. Amaral worked fifty-five hours.

63.     For the week ending July 24, 2010, Mr. Amaral was paid for forty hours.

64.     For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

65.     During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

66.     During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

67.     For the week ending July 31, 2010, Mr. Amaral worked fifty-five hours.

68.     For the week ending July 31, 2010, Mr. Amaral was paid for forty hours.

69.     For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

70.     During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

71.     During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

72.     For the week ending August 7, 2010, Mr. Amaral worked fifty-five hours.

73.     For the week ending August 7, 2010, Mr. Amaral was paid for forty hours.

74.     For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

75.     During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

76.     During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

77.     For the week ending August 14, 2010, Mr. Amaral worked fifty-five hours.

78.     For the week ending August 14, 2010, Mr. Amaral was paid for forty hours.

79.     For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

80.     During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

81.     During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

82.     For the week ending August 21, 2010, Mr. Amaral worked fifty-five hours.

83.     For the week ending August 21, 2010, Mr. Amaral was paid for forty hours.

84.     For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

85.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

86.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

87.   For the week ending August 28, 2010, Mr. Amaral worked fifty-five hours.

88.   For the week ending August 28, 2010, Mr. Amaral was paid for forty hours.

89.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

90.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

91.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

92.   For the week ending September 4, 2010, Mr. Amaral worked fifty-five hours.

93.   For the week ending September 4, 2010, Mr. Amaral was paid for forty hours.

94.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

95.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

96.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

97.   For the week ending September 11, 2010, Mr. Amaral worked forty-four hours.

98.   For the week ending September 11, 2010, Mr. Amaral was paid for thirty-two hours.

99.   For this week, Mr. Amaral was not paid straight time or overtime for 12.00 hours.

100.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

101.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

102.    For the week ending September 18, 2010, Mr. Amaral worked fifty-five hours.

103.    For the week ending September 18, 2010, Mr. Amaral was paid for forty hours.

104.    For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

105.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

106.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

107.    For the week ending September 25, 2010, Mr. Amaral worked fifty-five hours.

108.    For the week ending September 25, 2010, Mr. Amaral was paid for 40.5 hours.

109.    For this week, Mr. Amaral was not paid straight time or overtime for 14.5 hours.

110.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

111.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

112.    For the week ending October 2, 2010, Mr. Amaral worked fifty-five hours.

113.    For the week ending October 2, 2010, Mr. Amaral was paid for forty hours.

114.    For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

115.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

116.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

117.   For the week ending October 9, 2010, Mr. Amaral worked sixty and one-half hours.

118.   For the week ending October 9, 2010, Mr. Amaral was paid for forty-four hours.

119.   For this week, Mr. Amaral was not paid straight time or overtime for 16.50 hours.

120.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

121.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

122.   For the week ending October 16, 2010, Mr. Amaral worked thirty-eight hours.

123.   For the week ending October 16, 2010, Mr. Amaral was paid for thirty and one-half hours.

124.   For this week, Mr. Amaral was not paid straight time or overtime for 6.50 hours.

125.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

126.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

127.   For the week ending October 23, 2010, Mr. Amaral worked fifty-nine and one-half hours.

128.   For the week ending October 23, 2010, Mr. Amaral was paid for forty-three and one-half hours.

129.   For this week, Mr. Amaral was not paid straight time or overtime for 16.00 hours.

130.  During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

131.  During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

132.  For the week ending November 6, 2010, Mr. Amaral worked fifty-six hours.

133.  For the week ending November 6, 2010, Mr. Amaral was paid for 40.5 hours.

134.  For this week, Mr. Amaral was not paid straight time or overtime for 15.50 hours.

135.  During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

136.  During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

137.  For the week ending November 13, 2010, Mr. Amaral worked fifty-five hours.

138.  For the week ending November 13, 2010, Mr. Amaral was paid for forty hours.

139.  For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

140.  During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

141.  During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

142.  For the week ending November 20, 2010, Mr. Amaral worked fifty-five hours.

143.  For the week ending November 20, 2010, Mr. Amaral was paid for forty hours.

144.  For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

145.  During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

146.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

147.   For the week ending November 27, 2010, Mr. Amaral worked thirty-three hours.

148.   For the week ending November 27, 2010, Mr. Amaral was paid for twenty-four hours.

149.   For this week, Mr. Amaral was not paid straight time or overtime for 9.00 hours.

150.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

151.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

152.   For the week ending December 4, 2010, Mr. Amaral worked fifty-five hours.

153.   For the week ending December 4, 2010, Mr. Amaral was paid for forty hours.

154.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

155.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

156.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

157.   For the week ending December 11, 2010, Mr. Amaral worked fifty-five hours.

158.   For the week ending December 11, 2010, Mr. Amaral was paid for forty hours.

159.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

160.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

161.     During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

162.     For the week ending December 18, 2010, Mr. Amaral worked fifty-five hours.

163.     For the week ending December 18, 2010, Mr. Amaral was paid for forty hours.

164.     For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

165.     During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

166.     During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

167.     For the week ending December 25, 2010, Mr. Amaral worked forty-four hours.

168.     For the week ending December 25, 2010, Mr. Amaral was paid for thirty-two hours.

169.     For this week, Mr. Amaral was not paid straight time or overtime for 12.00 hours.

170.     During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

171.     During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

172.     For the week ending January 1, 2011, Mr. Amaral worked thirty-three hours.

173.     For the week ending January 1, 2011, Mr. Amaral was paid for twenty-four hours.

174.     For this week, Mr. Amaral was not paid straight time or overtime for 9.00 hours.

175.     During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

14

176.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

177.   For the week ending January 8, 2011, Mr. Amaral worked fifty-five hours.

178.   For the week ending January 8, 2011, Mr. Amaral was paid for forty hours.

179.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

180.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

181.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

182.   For the week ending January 15, 2011, Mr. Amaral worked fifty-five hours.

183.   For the week ending January 15, 2011, Mr. Amaral was paid for forty hours.

184.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

185.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

186.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

187.   For the week ending January 29, 2011, Mr. Amaral worked fifty-five hours.

188.   For the week ending January 29, 2011, Mr. Amaral was paid for forty hours.

189.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

190.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

191.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

192.    For the week ending February 5, 2011, Mr. Amaral worked sixty-six hours.

193.    For the week ending February 5, 2011, Mr. Amaral was paid for forty-eight hours.

194.    For this week, Mr. Amaral was not paid straight time or overtime for 18.00 hours.

195.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

196.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

197.    For the week ending February 19, 2011, Mr. Amaral worked fifty-five hours.

198.    For the week ending February 19, 2011, Mr. Amaral was paid for forty hours.

199.    For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

200.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

201.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

202.    For the week ending February 26, 2011, Mr. Amaral worked forty-five and one-half hours.

203.    For the week ending February 26, 2011, Mr. Amaral was paid for thirty-three hours.

204.    For this week, Mr. Amaral was not paid straight time or overtime for 12.50 hours.

205.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

206.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

207.    For the week ending March 5, 2011, Mr. Amaral worked fifty-five hours.

208.    For the week ending March 5, 2011, Mr. Amaral was paid for forty hours.

209.    For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

210.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

211.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

212.    For the week ending March 12, 2011, Mr. Amaral worked fifty-seven and one-half hours.

213.    For the week ending March 12, 2011, Mr. Amaral was paid for forty-two hours.

214.    For this week, Mr. Amaral was not paid straight time or overtime for 15.50 hours.

215.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

216.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

217.    For the week ending April 9, 2011, Mr. Amaral worked fifty-five hours.

218.    For the week ending April 9, 2011, Mr. Amaral was paid for forty hours.

219.    For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

220.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

221.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

222.    For the week ending April 16, 2011, Mr. Amaral worked fifty-five hours.

223.    For the week ending April 16, 2011, Mr. Amaral was paid for forty hours.

224.    For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

225.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

226.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

227.    For the week ending April 23, 2011, Mr. Amaral worked fifty-one and one-half hours.

228.    For the week ending April 23, 2011, Mr. Amaral was paid for thirty-eight hours.

229.    For this week, Mr. Amaral was not paid straight time or overtime for 13.50 hours.

230.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

231.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

232.    For the week ending April 30, 2011, Mr. Amaral worked fifty-five hours.

233.    For the week ending April 30, 2011, Mr. Amaral was paid for forty hours.

234.    For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

235.    During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

236.    During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

237.    For the week ending May 7 2011, Mr. Amaral worked fifty-five hours.

238.    For the week ending May 7, 2011, Mr. Amaral was paid for forty hours.

239.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

240.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

241.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

242.   For the week ending May 14 2011, Mr. Amaral worked fifty-five hours.

243.   For the week ending May 14, 2011, Mr. Amaral was paid for forty hours.

244.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

245.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

246.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

247.   For the week ending May 21, 2011, Mr. Amaral worked fifty-five hours.

248.   For the week ending May 21, 2011, Mr. Amaral was paid for forty hours.

249.   For this week, Mr. Amaral was not paid straight time or overtime for 15.50 hours.

250.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

251.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

252.   For the week ending May 28, 2011, Mr. Amaral worked fifty-five hours.

253.   For the week ending May 28, 2011, Mr. Amaral was paid for forty hours.

254.   For this week, Mr. Amaral was not paid straight time or overtime for 15.00 hours.

255.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

256.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

257.   For the week ending June 4, 2011, Mr. Amaral worked thirty-eight and one-half hours.

258.   For the week ending June 4, 2011, Mr. Amaral was paid for thirty-two hours.

259.   For this week, Mr. Amaral was not paid straight time or overtime for 6.50 hours.

260.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

261.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

262.   For the week ending June 11, 2011, Mr. Amaral worked fifty-nine hours.

263.   For the week ending June 11, 2011, Mr. Amaral was paid for forty-eight hours. For this week, Mr. Amaral was not paid straight time or overtime for 11.00 hours.

264.   During this week, similarly-situated co-workers were not paid time and a half for all time worked over the 40-hour-per-week mark.

265.   During this week, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

266.   After Mr. Amaral was terminated, similarly-situated co-workers continued to work more than forty hours per week.

267.   After Mr. Amaral was terminated, similarly-situated co-workers continued to work more than eight hours per day.

268.    After Mr. Amaral was terminated, similarly-situated co-workers were not paid any wage or overtime for any work suffered or permitted over the forty-hour-per week mark each week.

269.    After Mr. Amaral was terminated, similarly-situated co-workers were not paid any wage for at least some time worked over the 8-hour-per-day mark.

270.    At all times relevant to this Complaint, Defendants did not use a timeclock.

### III.   COLLECTIVE ACTION / CLASS ACTION ALLEGATIONS

271.   Mr. Amaral, Local 7 Laborer/Weatherization Workers, Local 7 laborer/Door and Window Installers, Local 7 Laborer/Energy Auditors, and other similarly-situated non-supervisory Advantage employees who were not exempt from the requirements of the Fair Labor Standards Act ("FLSA") nor equivalent Massachusetts statutes, are hereinafter referred to as "Collective/Class Action Members."

272.   Advantage issued a memorandum on September 17, 2010, stating that it intended to follow guidelines written into the Laborers' New England Region Residential Weatherization Agreement concerning meal break and overtime requirements for all field employees.

273.   In this memorandum, Advantage quoted a provision in the CBA stating that neither "travel time, nor commuting time, lunch or other scheduled breaks shall constitute or be calculated as hours of work…except when an employee is directed by the employer, a supervisor or crew chief to report to load or offload materials or equipment before normal working hours . . . ."

274.   Advantage also made it clear in the September 17, 2010, memorandum that "hours worked in excess of forty hours per week shall be paid for at the rate of time and one-half the straight time rate…."

275.   Advantage also made it clear in the September 17, 2010, memorandum that "employees are encouraged . . . to come to the warehouse and get a ride . . . to the jobsite" or risk not working that day.

276.    All Collective/Class Action Members frequently worked an average of up to an additional approximately three hours each day loading and unloading the trucks and commuting to a work site.

277.    Between June, 2010 (at the latest) and the present, Defendants have had a policy and practice of not paying Collective/Class Action Members any pay for work, suffered or permitted, after Collective/Class Action Members worked beyond forty hours per week.

278.    Between June, 2010 (at the latest) and the present, Defendants have had policy and practice of not paying any Collective/Class Action Members any pay for any work loading and unloading equipment and materials into or from Defendants' trucks at beginning and end of each weekday.

279.    Between June 27, 2010, (at the latest), and his termination, Mr. Amaral worked beyond forty hours almost every week with the full knowledge and ratification of his supervisors and co-workers.

280.    Between June 27, 2010, and Mr. Amaral's termination, defendants almost always did not pay Mr. Amaral any wage for Mr. Amaral's work suffered or permitted beyond forty hours per week.

281.    Between June 27, 2010, and Mr. Amaral's termination, defendants usually did not pay Mr. Amaral any wage for Mr. Amaral's work suffered or permitted beyond the eight-hour per day mark.

282.    Upon information and belief, after June 27, 2010 (at the latest), all Collective/Class Action Members worked beyond forty hours per week with the full knowledge and ratification of their supervisors and defendants.

283. Upon information and belief, after June 27, 2010 (at the latest), defendants almost always failed to pay Collective Action Members any wages for work suffered or permitted after Collective/Class Action Members worked beyond forty hours per week.

284. Upon information and belief, after June 27, 2010 (at the latest), defendants almost always failed to pay Collective Action Members any wages for work suffered or permitted after Collective/Class Action Members worked beyond eight hours in a day.

285. After approximately June 27, 2010, at the latest, defendants did not compensate Collective/Class Action Members for all of the hours they worked despite Collective/Class Action Members' performance of the principal duties for which Advantage employed the Collective/Class Action Members, which were an integral part of the principal activities for which Collective/Class Action Members were employed, which were indispensable to the performance of such principal activities, and which were controlled and required by defendants for Advantage's benefit.

286. After approximately June 27, 2010, at the latest, defendants knowingly and willfully refused to comply with Advantage's known obligation to pay Collective/Class Action Members full wages for all hours worked.

287. After approximately June 27, 2010, at the latest, defendants knowingly and willfully refused to comply with Advantage's known obligation to pay Collective/Class Action Members full wage payments by properly computing overtime premiums based upon full wage payments for all hours worked and all

earned overtime pay for each hour worked in excess of forty hours in each workweek.

288.   Pursuant to 29 U.S.C. § 216(b), Mr. Amaral seeks to prosecute his FLSA claim as a collective action on behalf of all persons who are or were formerly employed by Advantage as Local 7 Laborer/Weatherization Workers, Local 7 laborer/Door and Window Installers, Local 7 Laborer/Energy Auditors, or other similar non-supervisory positions over the last three years.

289.   Pursuant to Massachusetts Rules of Civil Procedure Rule 23, Mr. Amaral seeks to prosecute his Massachusetts wage and overtime claim as a class action on behalf of Collective/Class Action Members.

290.   At all times relevant to this action, Collective/Class Action Members' work involved non-discretionary duties and non-salaried compensation under the direction of a supervisor.  Rarely, if ever, did their duties involve discretion or independent judgment, work directly related to management operations or any exercise of judgment beyond complying with repetitive routines practiced by Advantage's standard operating procedures.

291.   Neither Mr. Amaral nor any Collective/Class Action Members are exempt from the FLSA or state law equivalents.

292.   The precise number of Collective/Class Action Members is known to Advantage. Due to the numerous numbers of Local 7 Laborer/Weatherization Workers, Local 7 laborer/Door and Window Installers, Local 7 Laborer/Energy Auditors and other non-exempt professionals that were/are still employed by Advantage, there are likely over 20 Collective/Class Action Members.

293.    A collective and class action is superior to other available methods of adjudication of this controversy because joinder of all Collective/Class Action Members is impractical and undesirable.

294.    The damages of some Collective/Class Action Members may be so small as to make the expense and burden of individual litigation impractical and redress of Collective/Class Action Members' harm impossible.

295.    This Court will have no difficulty managing this as a collective and class action.

296.    Mr. Amaral and the Collective/Class Action Members are similarly-situated to each other, making collective action treatment of their FLSA claim proper.

297.    Common facts and questions of law are shared by Mr. Amaral and the Collective/Class Action Members.

298.    Mr. Amaral is aware of no difficulty that will be encountered in the management of this litigation that would preclude its approval as a collective and class action.

**COUNT I**
**WILLFUL REFUSAL TO PAY**
**PROPERLY-COMPUTED OVERTIME PREMIUMS**
**29 U.S.C. §§ 207 and 215(a)(2)**

299.    Plaintiffs repeat and incorporates by reference all allegations above and below as if fully set forth here.

300.    Mr. Amaral was regularly scheduled to work forty hours a week.

301.    By working after regular work hours an average of approximately three hours per shift with knowledge of his supervisors, Mr. Amaral worked an average of an additional approximately fifteen hours of unscheduled, unpaid time per week.

302.    Upon information and belief, since June 27, 2010 (at the latest), Collective/Class Action Members have worked approximately one to fifteen hours of overtime each week, for which Collective/Class Action Members have received no straight time wages or overtime pay, in violation of 29 U.S.C. § 207.

303.    At all times relevant to this action, defendant Kelly acted directly or indirectly in the interest of Advantage in relation to Mr. Amaral for purposes of the FLSA.

304.    At all times relevant to this action, defendant Kelly had ultimate control over the Advantage's day-to-day scheduling, pay practices, and operations involving Collective/Class Action Members.

305.    Defendants willfully and repeatedly violated and are willfully violating the provisions of 29 U.S.C. §§ 207 and 215(a)(2) by employing Collective/Class Action Members for workweeks longer than forty (40) hours without paying overtime for all hours worked in excess of forty (40) hours in each workweek as required by the FLSA.

306.    Defendants are jointly and severally liable to Collective/Class Action Members for willful violations of the overtime wage payment requirements of the FLSA by refusing to pay properly computed overtime premiums to each Collective Action Member for all overtime hours worked in each workweek.

307.    Defendants are jointly and severally liable to Collective/Class Action Members for all unpaid wages and an additional equal amount as liquidated damages given the knowing and willful character of Advantage's violations of the FLSA.

**COUNT II**
**WILLFUL REFUSAL TO MAKE TIMELY FULL WAGE PAYMENTS**
**29 C.F.R. § 778.106 & 29 U.S.C. §§ 207 and 215(a)(2)**

308. Plaintiffs repeat and incorporates by reference all allegations above and below as if fully set forth here.

309. By the aforementioned acts and omissions, defendants willfully and repeatedly violated and are willfully violating the provisions of 29 U.S.C. §§ 207 and 215(a)(2) and 29 C.F.R. § 778.106 by employing Collective/Class Action Members for workweeks longer than forty (40) hours without paying each Plaintiff each week on Advantage's established payday for all overtime premiums earned by each Plaintiff in the preceding workweek as required by the FLSA.

310. Defendants are jointly and severally liable to Collective/Class Action Members for willful violations of the wage payment requirements of the FLSA by refusing to pay each Plaintiff each week on the Advantage's established payday all overtime premiums earned by each Plaintiff in the preceding workweek as required by the FLSA.

311. Defendants are jointly and severally liable to Collective/Class Action Members for all unpaid wages and an additional equal amount as liquidated damages given the knowing and willful character of Advantage's violations of the FLSA.

**COUNT III**
**FLSA RETALIATION**
**29 U.S.C. § 215(a)(3)**

312. Plaintiffs repeat and incorporates by reference all allegations above and below as if fully set forth here.

313.    Mr. Amaral's demotion to less desirable work was temporally proximate to his filing complaints about Advantage's illegal failure to pay Mr. Amaral's overtime as required by the FLSA.

314.    Mr. Amaral's demotion to less desirable work was caused by his repeatedly filing complaints about Advantage's failure to pay overtime under the FLSA, causing Mr. Amaral damages.

315.    Mr. Amaral's termination was temporally proximate to his filing complaints about Advantage's illegal failure to pay Mr. Amaral's overtime as required by the FLSA.

316.    Mr. Amaral's termination was caused by his repeatedly filing complaints about Advantage's failure to pay overtime under the FLSA, causing Mr. Amaral damages.

## COUNT IV
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

317.    Plaintiffs repeat and incorporates by reference all allegations above and below as if fully set forth here.

318.    Mr. Amaral's termination was caused by his complaining about Advantage's illegal pay practices, which is contrary to the public policy in this state.

## COUNT V
## WILLFUL REFUSAL TO PAY FOR HOURS WORKED
### Mass. Gen. Laws ch. 149, §§ 148 & 150

319.    Plaintiffs repeat and incorporates by reference all allegations above and below as if fully set forth here.

320.    Since June, 2010 (at the latest), Collective/Class Action Members have worked approximately one to fifteen hours each week without pay, a violation of state law.

321.    Defendants willfully and repeatedly violated and are willfully violating Mass. Gen. Laws ch. 149, §§ 148 and 150 by failing or refusing to pay Collective/Class Action Members wage payments for each hour worked by each such Collective Action Member, as required by Massachusetts law.

322.    Defendants stand jointly and severally liable to Collective/Class Action Members for willful violations of the wage payment requirements of Massachusetts law by refusing to pay Collective/Class Action Members wage payments for all hours worked as required by Mass. Gen. Laws ch. 149, §148.

323.    Defendants stand jointly and severally liable to Collective/Class Action Members for all unpaid wages and an additional treble damages as liquidated damages given the knowing and willful character of defendants' violations of Massachusetts wage and hour laws and wage underpayments thereby resulting.

### COUNT VI
### <u>WILLFUL REFUSAL TO PAY OVERTIME</u>
### Mass. Gen. Laws ch. 151, §§ 1A, 1B & 19

324.    Plaintiffs repeat and incorporates by reference all allegations above and below as if fully set forth here.

325.    Defendants stand jointly and severally liable to Collective/Class Action Members for willful violations of the wage payment requirements of Massachusetts law by refusing to pay Collective/Class Action Members wage payments for all hours worked as required by Mass. Gen. Laws ch. 151, §1A <u>et seq</u>.


WHEREFORE, Plaintiff Derek Amaral respectfully requests that this Honorable Court:

(1)    Designate this action as a collective action under the FLSA on behalf of the

Collective/Class Action Members and prompt issuance of notice pursuant to 29 U. S. C. § 216(b) to all Collective/Class Action Members, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U. S. C. § 216(b);

(2)    appoint Plaintiff and his counsel to represent the Collective/Class Action Members;

(3)    find that Defendants stand jointly and severally liable to Collective/Class Action Members for willful violations of the overtime and wage payment requirements of the FLSA and Massachusetts wage and hours laws;

(4)    award Collective/Class Action Members for all overtime and wage underpayments required to be paid by the FLSA, award an additional equal amount as liquidated damages, and award all other relief appropriate under the FLSA;

(5)    designate this action as a class action under Mass. Gen. Laws c. 151, §1A on behalf of the Collective/Class Action Members and allow prompt issuance of notice to all Collective/Class Action Members, apprising them of the pendency of this action;

(6)    appoint Plaintiff and his counsel to represent the Collective/Class Action Members on behalf of their state law claims;

(7)    find that Defendants stand jointly and severally liable to Collective/Class Action Members for willful violations of the overtime and wage payment requirements of the Massachusetts wage and hours laws;

(8)    award Collective/Class Action Members for all overtime and wage

underpayments required to be paid by the Massachusetts Wage and Hour laws, award two times an additional equal amount as liquidated damages, and award all other relief appropriate under Massachusetts wage and hour laws;

(9)    award Mr. Amaral front pay, back pay, compensatory damages, punitive damages, consequential damages, special damages, injunctive relief, reinstatement, and equitable relief for his FLSA retaliation claims, Mass. Gen. Laws c. 149 claims, and all other federal and state law claims above;

(10)    award Mr. Amaral and all Collective/Class Action Members attorneys' fees and costs under relevant federal and Massachusetts laws; and

(11)    all other relief this Honorable Court deems just and proper.

DEREK AMARAL
By His Attorney,

  /s/ Chip Muller
Chip Muller, Esq. (BBO # 672100)
Muller Law, LLC
155 South Main Street, Suite 101
Providence, RI 02903
(401) 256-5171 (ph)
(401) 256-5178 (fax)
chip@chipmuller.com

DEREK AMARAL by and through his attorney demands a TRIAL BY JURY on all counts so triable.

  /s/ Chip Muller
Chip Muller, Esq. (BBO # 672100)

Dated: August 23, 2012