# EXHIBIT A

Original

# LABORERS' NEW ENGLAND REGION
# RESIDENTIAL WEATHERIZATION AGREEM

This Agreement is made and entered into by and between Advantage Weatherization, Inc. whose company name and designee signature appears on the signature page of this agreement hereinafter referred to as the ("Employer") and The Massachusetts Laborers' District Council, The Rhode Island Laborers' District Council, and The Connecticut Laborers' District Council on behalf of their Residential Weatherization Local Union 7 hereinafter referred to as (Collectively the "Union").

## PREAMBLE

The purpose of the Agreement is to establish the hours, wages, fringes, and other conditions of employment, and to adopt measures for the settlement of differences and maintaining a cooperative relationship that the Employer may have sufficient capable workmen and the workmen may have as much continuous employment as possible, without interruption by strikes, lockouts, or other labor-management troubles.

NOW, THEREFORE, the undersigned Employer and the Union, in consideration of the mutual promises and covenants herein contained, agree as follows:

## *DECLARATION OF PRINCIPLES*

There shall be no discrimination against any employee by reason of race, creed, color, sex or national origin. The Employer, the Union and the Employees shall abide by the Federal Williams-Steiger Occupational Safety and Health Act and other Applicable safety regulations of Maine, New Hampshire and Vermont.

## ARTICLE I
## TERRITORIAL JURISDICTION

This Agreement shall apply throughout the geographic jurisdiction of the Union, which includes the entire states of Massachusetts, Rhode Island, Connecticut, Maine, New Hampshire and Vermont.

## ARTICLE II
## UNION RECOGNITION, UNION SECURITY AND EMPLOYMENT

*Section 1.*     The Employer hereby recognizes and acknowledges that the Union is the exclusive representative of all employees in the classifications and categories of work covered by this Agreement for the purpose of collective bargaining as provided by the Labor-Management Relations Act of 1947, as amended.

Inasmuch as the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein, the Employer recognizes the Union as the

1

exclusive bargaining agent under Section 9(a) of the National Labor Relations Act for all employees within the bargaining unit on all present and future job sites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employees' exclusive representative as the result of an NLRB election requested by the employees, or this Agreement is terminated in accordance with its terms by either party. The Employer agrees that it will not request an NLRB election and expressly waives any right it may have to do so. If the Union has not yet submitted a determination of its majority support, the Employer agrees that, upon the Union's presentation of evidence of majority status among its employees in the bargaining unit described herein, it will voluntarily recognize the Union as the exclusive bargaining agent for all employees within the bargaining unit on all present and future job sites within the jurisdiction of the Union. The Employer expressly waives any right it has to condition its recognition of the Union upon the Union's certification by the NLRB as the employees' bargaining representative following the NLRB election.

The Employer will bargain in good faith with respect to renewal or extension of the Agreement or any subsequent collective bargaining Agreement.

*Section 2.* All present employees who are members of the Union on the effective date of this Agreement shall remain members in good standing by the payment of their regular monthly dues as a condition of continued employment. All present employees who are not members of the Union and all employees who are hired hereafter for work in the classifications specified herein shall become and remain members in good standing by the payment of the required first three months dues on the (8) day following the execution of this Agreement or the date of employment, whichever is later, and shall thereafter maintain such good dues standing for the term of this Agreement.

*Section 3.* Upon receipt of written notice from the Union, the Employer shall discharge any employee who fails to become or is not a member of the Union on the prescribed day, provided membership was available under the same terms and conditions as generally applicable to other members. Further, all employees who fail to maintain their Union membership in good dues standing shall be summarily discharged by the Employer. The Union agrees to indemnify, defend and hold the Employer harmless from any claim arising from any such discharge.

*Section 4.* "Membership in good standing" as referred to herein means solely the tender or payment of normal dues.

*Section 5.* Should the present Federal Law be amended during the term of this Agreement to allow compulsory membership in the Union on the date of employment, or on any period less than eight (8) days from the commencement of employment, this clause is hereby automatically changed to include such amendments as of the effective date of the law.

*Section 6.* The Local Union shall be recognized as the principal source of laborers and shall be given the first opportunity to refer qualified applicants for employment. The Employer shall be the sole judge as to whether or not the laborers furnished are qualified. The Employer reserves the right to transfer or rehire laborers, provided that for those laborers rehired,

the Employer shall first notify the Union of the rehiring.

*Section 6(a).* The Employer recognizes that the Local Union having jurisdiction over the area is the established and prime source of skilled and dependable labor, necessary and required to perform the work covered by this Agreement and that, as of the date of this Agreement, the Local Union is ready, willing and able to furnish laborers to perform the work covered by this Agreement.

*Section 6(b).* The Employer reserves and shall have the right to rehire any employee who has been an employee of the Company, provided said employee has worked for the Employer during a period of six (6) months preceding the date of hiring.

*Section 6(c).* When the Employer has exhausted the rehiring of former employees as stated in Section 6(b) above, then the Employer must inform the Union office of all work opportunities and openings. The Union shall be given the first opportunity to refer applicants for such employment openings.

*Section 6(d).* The Employer reserves and shall have the right to accept or reject any applicants referred by the Local Union.

*Section 6(e).* In the event that the Local Union is unable to fill the requisition of the above Employer for employees within a twenty-four (24) hour period, excluding Saturdays, Sundays and holidays, after such requisition is made by the Employer, the Employer may employ applicants directly at the jobsite.

*Section 7. Subcontracting* The Employer agrees that the wages, hours and working conditions, including contributions to the Health & Welfare and Training provided by this Agreement shall encompass the entire work covered by this Agreement, thereby applying equally to any subcontract let by the Employer on work covered by this Agreement at the site of any job.

The Employer further agrees to refrain from doing business with any subcontractor for work, covered by this Agreement, to be done at the site of a residential weatherization project, except where such a subcontractor subscribes and agrees in writing to be bound by this Agreement, and complies with all of the terms and conditions of this Agreement.

This Section 7 shall not apply when vendors furnishing materials solely or to any person furnishing trucking or transportation, or when a suitable union subcontractor cannot be provided by the union.

The Employer shall send to the Union a list of subcontractors performing laborers' bargaining unit work.

Upon receiving notice from the Union or Benefit Fund Office that a subcontractor is delinquent in the payment of fringe benefit contributions, the general contractor will be liable for subsequent unpaid contributions on that project.

3

## ARTICLE III
## BUSINESS MANAGER, FIELD REPRESENTATIVE, STEWARD, CREW CHIEF

*Section 1.* The Business Manager and Field Representatives of the applicable District Council or the Local Union shall be allowed to visit the job during working hours, provided the visit is mutually agreed to by the Parties. No union official shall be permitted access to the interior of any private residence at any time without permission from homeowner/resident and the Employer.

*Section 2.* The Local Union shall appoint a mutually agreed upon laborer steward to communicate to the Employer and the Local Union any issue that may arise regarding conditions contained herein. All Stewards shall be working Stewards. The steward shall be allowed a reasonable amount of time to check laborers' dues books and report any violations of the Agreement to the Local Union. The steward shall work on the job until the completion of all work covered by the terms of this Agreement and shall be offered the right of first refusal to work all overtime on the project that the steward is assigned to on that particular day when work covered by this Agreement is being performed. The Local Union shall be notified forty-eight (48) hours excluding Saturdays, Sundays and holidays prior to layoff of the steward.

*Section 3.* Crew Chiefs in charge of Laborers must be members of the Union.

## ARTICLE IV
## MANAGEMENT RIGHTS

*Section 1.* Except as otherwise provided herein, the Employer shall have the right to hire, fire, and direct the workforce and manage its business in accordance with its good faith business judgment. The Employer may impose discipline or other adverse action for just cause as it deems necessary or appropriate. The Employer agrees that the Union shall have equal opportunity with all other sources to refer new applicants for employment. The Employer retains sole discretion whether to hire an applicant for employment.

*Section 2.* Due to the residential nature of the industry and the likelihood that employees may have contact with residents, The Employer shall be entitled, but not obligated, to conduct a background check, including but not limited to a criminal record or CORI record search, a sex offender database search or to obtain other applicant information in its discretion. The Employer shall be entitled to interview, in person, any applicant. The Employer will notify the Union in writing of the names and addresses of all new hires within eight (8) days of the commencement of their employment. Employer shall be solely and exclusively responsible for all hiring determinations, and Employer may decline to hire an applicant for any reason, or for no reason, consistent with applicable laws. There shall be no discrimination against any Laborer by reason of race, creed, color, sex, age or national origin.

4

# ARTICLE V
# DISPUTE RESOLUTION, GRIEVANCE PROCEDURE AND ARBITRATION

Any dispute arising out of or under this Agreement, shall be reduced to writing within ten days of the time the grieving party knew or reasonably should have known of the events giving rise to the grievance. The dispute shall be discussed by representatives of the Union and the Employer at the jobsite where the dispute arose. If no agreement is reached by the parties, the Employer or the Union may demand arbitration under the procedures of the American Arbitration Association. The cost of any arbitration shall be shared equally by the Employer and the Union. The arbitrator shall have the authority to decide the issue in dispute, but shall have no authority to change, amend, add to, or detract from the provisions of this Agreement. The arbitrator's decision shall be final and binding.

# ARTICLE VI
# HOURS OF WORK AND SHIFT OPERATIONS

Due to the nature of residential weatherization work, the Employer shall be free to designate the hours and days of work. Neither travel time, nor commuting time, lunch or other scheduled breaks shall constitute or be calculated as hours of work under this Agreement except when an employee is directed by the employer, a supervisor or crew chief to report to load or offload materials or equipment before or after normal working hours and except when an employee is required to work through scheduled breaks. Hours worked in excess of forty hours per week shall be paid for at the rate of time and one-half the straight time rate for the classification of the work being performed as defined by ARTICLE VIII herein,

# ARTICLE VII
# HOLIDAYS

Recognized holidays shall be as follows: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day. In the event a holiday falls on a weekend, the holiday should be celebrated on the date designated by the State or Federal Government. There shall be no paid holidays. Employees who work on holidays listed above shall be paid at double the applicable rate.

## ARTICLE VIII
## WAGE RATES/BENEFITS AND CLASSIFICATIONS

Wages: Employees shall be paid a regular hourly rate as follows:

(Wages) + (LNH&WF) + (Training) + (Dues & LPL)

From the effective date through September 30, 2010

Laborer/Weatherization worker: $17.00 + $3.25 + $0.45[$0.60 dues, $0.02 LPL] = $20.70

Laborer/Door and window installer: $22.00 + $3.25 + $0.45 [$0.60 dues, $0.02 LPL] = $25.70

Laborer/Weatherization Crew Chief $27.00 + $3.25 + $0.45 [$0.60 dues, $0.02 LPL] = $30.70

Laborer/Energy Auditor TBD

From October 1, 2010 through September 30, 2011

Laborer/Weatherization worker: $17.00 + $3.40 + $0.45[$0.60 dues, $0.02 LPL] = $20.85

Laborer/Door and window installer: $22.00 + $3.40 + $0.45 [$0.60 dues, $0.02 LPL] = $25.85

Laborer/Weatherization Crew Chief $27.00 + $3.40 + $0.45 [$0.60 dues, $0.02 LPL] = $30.85

Laborer/Energy Auditor TBD

*[handwritten: $16.38 / 21.38 / 26.38]*

In the event that Davis Bacon (prevail~~ing wages apply to work performed~~ by contract between the Employer and the awarding agency issuing the ~~contract, and those prevailing wa~~ges are greater than the wages collectively bargained between the Employ~~er and the Union as defined in this~~ above for the term of this agreement, Davis Bacon Wages shall prevail an~~d the Employer shall be bound~~ to state and/or federal requirements.

## ARTICLE IX
## SCOPE OF WORK

This Agreement shall apply to all residential weatherization projects. Specifically window and door repair and replacement, weatherization work including air sealing, insulation, caulking, boiler and hot water tank wrapping, weatherization crew supervision, energy auditing and to pre weatherization work.

6

## ARTICLE X
## NO STRIKE / NO LOCKOUT

It being the intention of both parties to work together successfully on weatherization programs, and in recognition that such programs depend upon work to and in the homes and residences of private citizens, the disruption to which would severely impair the Parties' ability to attract and maintain weatherization program work, it is agreed that there shall be no lockout by the Employer and no work stoppages by the Union except that the Union is excused from its commitment in the event the Employer shall fail to make prompt payment of wages, contributions to fringe benefit plans, or dues, assessments or fees to the Union.

Method of Payment of Wages: The Employer shall make regular weekly payments of all wages by cash or check. The payment of wages shall be accompanied by a statement or check stub showing the Employer's name and address, the employee's name, hours worked, gross amount earned, all deductions and the net amount due.

Check-Off of Dues: The Employer agrees to deduct from the pay of each employee and remit to the Local Union all dues, fees, and assessments authorized by the employee, pursuant to a voluntary, written authorization provided to the Employer which is signed by each employee and is on a form consistent with applicable law, such as the sample form set forth in Addendum "A" attached hereto.

## ARTICLE XI
## NOTICE TO UNION OF PROJECTS

The Employer shall notify the Local Union by facsimile transmission of all weatherization projects/programs for which it is the successful bidder, not less than 48 hours prior to the start of the job. There shall be a minimum of one (1) notice per program, and individual residences shall not be construed as separate programs. The notice shall include the location of the project, the approximate number of laborers that will be required at its commencement and the estimated time the job will begin.

## ARTICLE XII
## HEALTH AND SAFETY

In accordance with the requirements of the Occupational Safety and Health Act of 1970, it shall be the exclusive responsibility of the Employer to insure the safety and health of its employees and compliance by them with any safety and health rules contained herein or established by the Employer; The Union assumes no duty to enforce safety rules or the applicable federal and state laws. The Employer will not engage in any litigation against the Union on a subrogation theory, contribution theory, or otherwise, so as to obtain a money judgment from it in connection with any death or injury which occurs on the jobsites covered by this Agreement. Nothing in this Agreement shall make the Union liable to any employees or to any other persons in the event that injury, illness or accident occurs.

## ARTICLE XIII
## SAVINGS CLAUSE

Generally: Any provisions in this Agreement which are in contravention of any Federal, State, Local or County regulations, or laws affecting all or part of the limits covered by this Agreement, shall be suspended in operation within the limits to which such laws or regulations are in effect. Such suspension shall not affect the operation or any such provisions covered by this Agreement to which the law or regulation is not applicable, nor shall it affect the operations of the remainder of the provisions of this Agreement within the limits to which such law or regulation is applicable.

Other Matters: The parties agree to bargain upon demand regarding any mandatory subject of bargaining which is not covered in this Agreement. This Agreement may be modified or amended when necessary, if mutually agreed upon in writing by the Employer and the Union.

## ARTICLE XIV
## MISCELLANEOUS/COOPERATION

*Section 1.* The Parties recognize that the endeavor set forth in the Agreement is a mutually beneficial opportunity. It is the intent of the Parties to cooperate together in all ways reasonable and proper to grow this cooperative opportunity. In order to maximize the Parties' opportunity to perform at the highest level, and attract and secure new opportunities, it is agreed as follows:

*Section 2.* The Union shall make its reasonable best efforts to assist the efforts of the Employer and all future Signatory Weatherization Contractors to capitalize upon new business opportunities, including through introductions to new business development leads, notification of business opportunities, or otherwise, including, without limitation, such opportunities relating to RFP programs, consultants, utility companies, not-for-profit companies, pilot programs and grant opportunities. The Union shall not favor any entity over any other signatory weatherization contractor with regard to the origination, promotion, or facilitation, of residential weatherization program/business.

## ARTICLE XV
## CONDITIONS OF AGREEMENT

*Section 1.* In the event an employee is discharged or laid off for any reason, except for just cause, after 12:00 Noon on any day, his wages shall be paid in full before 4:00 PM. If an employee quits of his own accord, he shall receive wages for the time that he worked on the next regular pay day.

*Section 2.* Rain gear must be provided by the Employer when men are required to work in the rain. Men cannot be discharged if they are unable to work because they are not furnished rain gear, provided that, notwithstanding any other provision in this Agreement, no payment

8

shall be made for time not worked. All tools and rain gear other than those customarily furnished by the employees, necessary to the performance of any work covered by this Agreement, shall be furnished by the Employer and shall remain the property of the Employer and shall be returned to the Employer when not in use or upon leaving his employ.

*Section 3. Drinking Water* The Employer shall provide a clean source of drinking water with paper cups, readily available to each employee on the work site.

*Section 4. Lost Time Because of Accidents*
a) There shall be no lost time on the day of a minor injury for any employee obliged to receive medical attention and treatment providing he returns to work within a reasonable time on that day.

b) When an employee is seriously injured on the job, the steward or the crew chief shall be permitted to notify the Union of the injury.

*Section 5. Health, Safety and Welfare* The Employer and the Union agree to mutually cooperate and consult with each other with respect to all aspects of safety, accident prevention, health, medical facilities and medical treatment, to the end that the health, safety and welfare of the men working on the project may be adequately and properly protected and promoted and the prosecution of the work efficiently carried on; also, the Employer, the Union and the employees shall abide by the Federal Williams-Steiger Occupational Safety and Health Act and applicable safety regulations of the respective states covered by the geographical jurisdiction of this Agreement.

Any referral assigned to the Employer by the Local Union shall be required to complete a ten (10) hour safety program provided by the New England Laborers' Training Trust Fund. The Employer and the Union shall further cooperate in scheduling the training of all employees covered by this agreement.

*Section 6. Telephone* A phone shall be made available on the job site for the employees' use in case of emergency, if telephone service is available. The use of personal cell phones, Ipods, radios, Blackberrys and other similar electronic devices is strictly prohibited at the site of construction projects during working hours.

## ARTICLE XVI
## LABORERS' NATIONAL HEALTH AND WELFARE FUND

*Section 1.* The Employer agrees to contribute to the Laborers' National Health and Welfare Fund (LNH&WF) on behalf of each and every employee covered by this Agreement in accordance with this Article so that the employees can obtain and retain eligibility for coverage under the Fund's "Plan 1."

*Section 2.* Effective as of the effective date of this Agreement, the Employer shall contribute to the Fund at the rate set forth below for each and every hour for which an employee covered by this Agreement is entitled to pay:
    (a) For employee hours before October 1, 2010: $3.25 per hour.

9

(b)  For employee hours during the period October 1, 2010 through September 30, 2011: $3.40 per hour

*Section 3.*  Contributions shall be due and paid on a monthly basis. Specifically, contributions earned during a calendar month shall be due and paid by the twentieth (20th) day of the immediately following calendar month. Unless otherwise agreed by the Fund, contributions shall be paid by check made payable to the Fund and delivered by U.S. Mail to the Laborers' National Health and Welfare Fund, P.O. Box 94402, Chicago, Illinois 60690-4402.

*Section 4.*  Together with each contribution payment, the Employer shall deliver to the Fund such monthly contribution remittance reports as the Fund may require to verify and properly credit the contributions.

*Section 5.*  The Employer shall retain the payroll records and other records on which its contribution reports are based for a period of at least six years. The Fund shall be entitled to have an independent certified public accountant audit the Employer's records from time-to-time to reasonably verify the accuracy of the Employer's contribution. The Employer, upon the Fund's request, shall provide the Fund with and other information needed for proper administration of the Fund.

*Section 6.*  In the event that an Employer fails to pay all of the contributions due owed by the due date, the Employer shall be liable to the Fund for all of the remedies provided under the Fund's Agreement and Declaration of Trust and applicable law, including interest at the rate of one-and-one-half percent (1.5%) per month compounded from the due date through the date of payment, liquidated damages, the expenses of collection incurred by the Fund, auditing fees, attorneys' fees, and court costs. The Fund shall be entitled to pursue such remedies without regard to any grievance, arbitration or alternative dispute procedure provided by this Agreement. The Fund shall be entitled to withhold benefit payments or terminate coverage in the event that the Employer is delinquent. It is agreed that the employees' loss of coverage due to the Employer's contribution delinquency shall constitute irreparable harm and that the Fund shall be entitled to injunctive relief.

*Section 7.*  The Employer and the Union hereby adopt by reference the Fund's Agreement and Declaration of Trust which governs the operations of the Fund as a trust fund established for the purpose of providing health and welfare to eligible participants and beneficiaries in accordance with Section 302(c) of the Labor-Management Relations Act, the Employee Retirement Income Security Act, and the Internal Revenue Code. A copy of the Agreement and Declaration of Trust has been provided to the Employer.

## ARTICLE XVII
## NEW ENGLAND LABORERS' TRAINING TRUST FUND

*Section 1.*  Each Employer agrees to pay the sum reflected in Article VIII of this Agreement, per hour worked by each employee covered by the terms of this Agreement, to a Training Fund known as New England Laborers' Training Trust Fund. Said sums will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked

by said employees up to the end of the last completed payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under, and subject to the provisions of, a Trust Agreement and Plan entered into by the Union and the Employers. The Plan and Trust shall conform to the Labor-Management Relations Act of 1947, as amended and all other applicable laws and regulations of the United States and the respective states covered by the geographical jurisdiction of this Agreement. The Trust and Plan at all times shall be a "qualified" Trust and Plan as defined by Section 401 of the Internal Revenue Code. The Plan and Trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of Federal Income Tax of the Employers.

*Section 2.* The failure to contribute by the Employer to the said Training Fund as provided herein, for the purpose of the remedy the Union may pursue is covered in Article XVIII herein. The New England Laborers' Training Trust Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

## ARTICLE XVIII
## DELINQUENT PAYMENTS

*Section 1.* Employers who are delinquent in their payments to Training Fund shall not have the privilege of employing laborers under the terms of this Agreement if such payments have not been made after written notice, sent by registered mail, return receipt requested, of such delinquency is given by the Union and seventy-two (72) hours have elapsed since such notice. All employees affected by such delinquency to any of the above-mentioned Funds, and who have lost work as a result thereof, shall be paid their normal wages by the delinquent Employer, until said delinquency is cured and the employees resume their work.

Once an Employer has been adjudged a delinquent by any of the above-mentioned Fund Trustees, he shall, in addition to remitting to the Funds for his past delinquencies, be required to make his current payments on a weekly basis and further furnish a fifty thousand dollar ($50,000) surety bond to the Trustees of each respective Fund as listed above. All attorney's fees, sheriff's costs, accounting and court costs involved to collect delinquent payments from the delinquent Employer must be borne fully by the Employer involved. The terms "delinquent" and "delinquency" as used in this section shall include a failure of an Employer to furnish a bond.

*Section 2.* In accordance with Section 5.02(g)(2) of ERISA, as amended, the Trustees do establish the rate of interest to be paid by Employers on delinquent contributions to be ten percent 10% and further, liquidated damages shall be assessed in an amount of twenty percent (20%) of the amount of the delinquency, or such higher percentage as may be permitted under Federal or State Law, plus reasonable attorney's fees and costs of the action.

*Section 3.* If an audit by the Trustees or their representative determines that an Employer has not correctly reported the hours worked by his Laborers, the Employer, in addition to other remedies provided in the Trust Agreement, shall be liable to the Funds for the cost of auditing his payroll records, interest at the rate stated in Section 2 above from the date when payment was

11

due to the date when payment was made, attorney's fees and liquidated damages in the amount of twenty percent (20%) of the delinquent amount.

*Section 4.* The parties agree that the Trustees of the Delinquency Committee shall have the right to terminate the collective bargaining agreement of any Employer deemed by them to be habitually delinquent.

## ARTICLE XIX
## CHECK-OFF AND PAYROLL DEDUCTIONS

*Section 1.* The Employer agrees to deduct the sum of sixty-two cents ($0.62) per hour for each hour worked from the weekly wages, after taxes, of each employee covered by this Agreement; provided, such employee has executed voluntary written authorization for such deductions to be allocated as follows:

(a) Sixty cents ($0.60) shall be used as hourly membership dues to support the Local Union and New England Region District Councils.

(b) Two cents ($.02) of the amount provided in Section 1 shall be used as a voluntary contribution payable to the Laborers' Political League (LPL) to enable the New England Region District Councils and its affiliated Local Unions to participate more fully in matters affecting the welfare of its members.

*Section 2.*   **A sample authorization for such deductions is as follows:**

## ADDENDUM A

### DUES DEDUCTION AUTHORIZATION

To all Employers by whom I am employed during the terms of the present or future Collective Bargaining Agreements either by and between signatory Contractor Associations and the Massachusetts, Rhode Island, Connecticut and ME, NH, & VT Laborers' District Council of the Laborers' International Union of North America, AFL-CIO and its Affiliates, or by an Employer, not a member of said Associations, which has an individual collective Bargaining Agreement with the Council and its affiliates.

I, _____ / _____
   (Print Member Name)                              (Social Security Number)

of Local #_____ hereby authorize my Employer to deduct from my wages each week sixty cents ($.60) per hour for each hour worked, or the amount of dues specified in any future collective bargaining agreement covering my employment, all of said amounts constitute what are known as the hourly deductions as part of my membership dues for said week owing by me to the Union. Such deduction shall be made from my earned pay on each regularly-scheduled pay day and shall be remitted to the designated depository at the same time and along with the Health & Welfare and New England Laborers Training Trust Fund

This authorization shall become operative upon the effective date of each Collective Bargaining Agreement entered into between my Employer and the Union or upon the date that I execute this card, whichever is sooner. This authorization shall remain in effect during the terms of the current and all future Collective Bargaining Agreements entered into between my Employer and the Union unless it is specifically revoked in writing, bearing the date and my signature, and delivered to the Offices of the Local Union of which I am a member and to the Employer to whom I am currently employed.

Signature:_____

Date:_____

13

## ARTICLE XX
## APPLICABILITY OF AGREEMENT

All applicable work within the territorial jurisdiction covered by this Agreement shall be performed under the terms and conditions of this Agreement.

## ARTICLE XXI
## FAVORED NATIONS CLAUSE

In no event shall the Employer be required to pay higher rates of wages, or be subject to more unfavorable working rules than those established by the Local Union for any other Employer engaged in similar work.

## ARTICLE XXII
## DURATION

The provisions of this Agreement will expire one year from the date of its execution by the parties, except that if neither party to this agreement gives notice in writing to the other party at least sixty (60) but no more than Ninety (90) days prior to the expiration date that it desires a change after the expiration date then this agreement will continue in effect for one year until the second anniversary date of the execution of this agreement and so on each year thereafter unless at least sixty (60), but not more than ninety (90) days prior to the expiration date of each year thereafter, a notice is given by either party.

It is expressly understood that this Agreement applies to the Employer whose name and designee signature appears on the signature page of this agreement and only the Employer whose name and designee signature appears on the signature page of this agreement and does not apply to any affiliate or related company of the Employer whose name and designee signature appears on the signature page of this Agreement.

RHODE ISLAND LABORERS'
DISTRICT COUNCIL

_____   DATE: 8/27/10
Ronald R. Coia, Business Manager

CONNECTICUT LABORERS'
DISTRICT COUNCIL

_____   DATE: 8/27/10
Charles T. LeConche, Business Manager

LABORERS' LOCAL UNION 7

_____   DATE: 8/27/10
Scott Gustafson, Business Manager

MASSACHUSETTS LABORERS'
DISTRICT COUNCIL

_____     DATE: 8/30/2010
Joseph C. Bonfiglio, Business Manager

RHODE ISLAND LABORERS'