UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DEREK AMARAL, Individually and on behalf  :
of all current and former similarly-situated     :
employees of Defendants,                         :
    *Plaintiff,*                                    :
                                                     :
v.                                               :  C.A. No. 1:12-CV-11583-DPW
                                                     :
ADVANTAGE WEATHERIZATION, INC.                   :
and JOHN KELLY,                                  :
    *Defendants.*                                   :

**MEMORANDUM FOR CONDITIONAL CERTIFICATION AND COURT FACILITATION OF NOTICE TO COLLECTIVE ACTION CLASS MEMBERS**

**I.     INTRODUCTION**

Plaintiff Derek Amaral ("Amaral" or "Plaintiff") submits this memorandum in support of his Motion for Conditional Certification and Court Facilitation of Notice to Collective Action Class Members ("Motion") pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA").[1] The Court should grant this Motion so that additional, similarly-situated current and former employees of Defendants Advantage Weatherization, Inc. ("Advantage") and John Kelly (collectively "Defendants") can be promptly notified of their right to participate in this lawsuit and so that the litigation can proceed to a resolution of the issues presented.

---

[1] The instant Motion is for conditional certification with respect to Plaintiff's overtime claims under the FLSA; Plaintiff intends to move for certification of his class action claims under Massachusetts law at a later date, after discovery is underway in this action.

**II.     PLAINTIFF'S CLAIMS**

   *A.     Procedural History*

On August 24, 2012, Amaral filed a complaint on behalf of himself and all other similarly-situated employees, alleging, *inter alia*, that Defendants willfully failed to pay overtime compensation required under the FLSA.   On September 17, 2012, Defendants filed a Motion to Dismiss Plaintiff's Complaint (Dkt. # 4).  Amaral opposed Defendants' motion, filing Plaintiff's Objection to Defendants' Motion to Dismiss Plaintiff's Complaint on October 10, 2012 (Dkt. # 12), which is still pending.  Thereafter, four similarly-situated former Advantage hourly employees filed with the Court consents to join the FLSA lawsuit as opt-in plaintiffs ("Opt-In Plaintiffs").[2]

   *B.     Summary of FLSA Claims*

Defendant Advantage is primarily engaged in the installation of weatherproofing materials in residential buildings ("Weatherization Job Sites").  Defendant Kelly is the owner, President, and a Director of Advantage.  Declaration of Derek Amaral In Support of Plaintiff's Motion ("Amaral Decl."), at ¶ 4[3]; Complaint ("Cmpt."), at ¶ 5.  Plaintiff and his similarly-situated coworkers are current or former hourly employees employed by Advantage as residential weatherization laborers to perform various manual labor tasks installing weatherproofing materials.  Amaral Decl., at ¶ 9.  Advantage referred to Plaintiff and his similarly-situated coworkers as "field employees."  Id.  Amaral pursues the FLSA overtime compensation claims on behalf of himself and all Advantage

---

[2] Specifically, Jose Silveira and Michael Santos filed consent forms on October 25, 2012 (Dkt. # 16); Casey Weaver filed a consent form on November 20, 2012 (Dkt. # 20); and Jeffrey Collins filed a consent form on November 21, 2012 (Dkt. # 21).

[3] The Declaration of Derek Amaral In Support of Plaintiff's Motion is attached as <u>Exhibit A</u> hereto.

residential weatherization laborers (including weatherization workers, door and window installers, crew chiefs, or energy installers), field employees, and other similarly-situated non-exempt hourly employees at any time from August 24, 2009 until the entry of judgment in this case (collectively "Collective Action Class Members").[4]

Defendants willfully violated the FLSA by (i) failing to honor the time Collective Action Class Members worked prior to and after their work at Weatherization Job Sites as compensable work time; and (ii) failing to compensate Collective Action Class Members at the FLSA-prescribed overtime rate of one and a half times their regular rate for such hours they worked in excess of 40 hours per week.  Cmpt., at ¶¶ 21–27; 47–268; 276–287; 299–311.  At all times relevant to this Complaint, Defendants have had a policy and practice of not paying Collective Action Class Members any straight or overtime pay for work loading and unloading equipment and materials into and out of Advantage's vehicles at the Brockton Warehouse at the beginning and end of each workday or traveling in Advantage's vehicles between the Brockton Warehouse and Weatherization Job Sites.  Id.  Such work was compensable work time under the FLSA and at least part of such time was in excess of 40 hours per week.  Id.

### C. *Facts In Support of Plaintiff's Motion*

All Collective Action Class Members worked as hourly workers out of Advantage's Brockton, Massachusetts location, were employed as weatherization

---

[4] August 24, 2009, is three years prior to the date Amaral filed the Complaint. The statute of limitations for a willful violation of the FLSA minimum wage and overtime provisions is three years. See 29 U.S.C. § 255(a) (setting forth 2-year statute of limitations in the absence of willfulness and 3 years when violation is willful).  Further, at the conditional certification stage, "[t]he Court does not make a determination of willfulness … and should therefore assume that the longer three-year statute of limitations applies." Trezvant v. Fid. Emplr. Servs. Corp., 434 F. Supp. 2d 40, 51 (D. Mass. 2006).

3

workers, door and window installers, crew chiefs, energy installers, or field employees, and regularly performed manual labor installing weatherproofing at various Weatherization Job Sites around Massachusetts.  Cmpt., at ¶ 11; Amaral Decl., at ¶¶ 5, 6, 9, 12–13; Silveira Decl.[5], at ¶¶ 4, 5, 8, 11–12; Santos Decl., at ¶¶ 4, 5, 8, 11–12; Weaver Decl., at ¶¶ 4, 5, 8, 11–12; Collins Decl., at ¶¶ 4, 5, 8, 11–12.  The Collective Action Class Members routinely reported to, and were supervised by, supervisors Joe Lambalot and Brian Machado.  Amaral Decl., at ¶¶ 10 & 11; Silveira Decl., at ¶¶ 9 & 10; Santos Decl., at ¶¶ 9 & 10; Weaver Decl., at ¶¶ 9 & 10; Collins Decl., at ¶¶ 9 & 10.

In performing their jobs, the Collective Action Class Members were routinely required by their supervisors to report to the Brockton Warehouse at the beginning of each workday at a time between approximately 6 a.m. and 7 a.m., depending on how far away the Weatherization Job Site was.  Cmpt., at ¶ 22; Amaral Decl., at ¶¶ 14 & 15; Silveira Decl., at ¶¶ 13 & 14; Santos Decl., at ¶¶ 13 & 14; Weaver Decl., at ¶¶ 13 & 14; Collins Decl., at ¶¶ 13 & 14.  After arrival at the Brockton Warehouse, the Collective Action Class Members were routinely required to obtain their assignment for the day and gather and load into Advantage vehicles materials and equipment necessary for their weatherproofing installation work.  Cmpt., at ¶ 22; Amaral Decl., at ¶¶ 16 & 17; Silveira Decl., at ¶¶ 15 & 16; Santos Decl., at ¶¶ 15 & 16; Weaver Decl., at ¶¶ 15 & 16; Collins Decl., at ¶¶ 15 & 16.  The Collective Action Class Members were routinely required to travel in Advantage vehicles to various Weatherization Job Sites around Massachusetts, as either drivers or passengers, with the goal of arriving at the Weatherization Jobs Sites

---

[5] Declaration of Jose Silveira ("Silveira Decl.") is attached as <u>Exhibit B</u> hereto, Declaration of Michael Santos ("Santos Decl.") is attached as <u>Exhibit C</u> hereto, Declaration of Casey Weaver ("Weaver Decl.") is attached as <u>Exhibit D</u> hereto, and Declaration of Jeffrey Collins ("Collins Decl.") is attached as <u>Exhibit E</u> hereto.

at approximately 8:00 a.m.  Amaral Decl., at ¶¶ 18 & 19; Silveira Decl., at ¶¶ 17 & 18; Santos Decl., at ¶¶ 17 & 18; Weaver Decl., at ¶¶ 17 & 18; Collins Decl., at ¶¶ 17 & 18.  The Collective Action Class Members routinely worked at Weatherization Job Sites performing manual labor installing weatherproofing, typically from approximately 8:00 a.m. until approximately 4:30 p.m., minus 30 minutes for lunch (which was unpaid).  Amaral Decl., at ¶¶ 20 & 21; Silveira Decl., at ¶¶ 19 & 20; Santos Decl., at ¶¶ 19 & 20; Weaver Decl., at ¶¶ 19 & 20; Collins Decl., at ¶¶ 19 & 20.  At the end of the day, after loading the Advantage vehicles with materials and equipment, the Collective Action Class Members were routinely required to travel back to the Brockton Warehouse in the Advantage vehicles, as either drivers or passengers.  Cmpt., at ¶ 25; Amaral Decl., at ¶¶ 22 & 23; Silveira Decl., at ¶¶ 21 & 22; Santos Decl., at ¶¶ 21 & 22; Weaver Decl., at ¶¶ 21 & 22; Collins Decl., at ¶¶ 21 & 22.  Upon arrival at the Brockton Warehouse, Defendants routinely required the Collective Action Class Members to secure equipment in specific areas in the warehouse (including parking the company vehicles, storing the vehicle keys and camera equipment in the office, bringing the insulation tanks into the warehouse when the weather was cold, and/or placing the two-way radios back on chargers) prior to leaving work in their own vehicles.  Cmpt., at ¶ 25; Amaral Decl., at ¶¶ 24 & 25; Silveira Decl., at ¶¶ 23 & 24; Santos Decl., at ¶¶ 23 & 24; Weaver Decl., at ¶¶ 23 & 24; Collins Decl., at ¶¶ 23 & 24.  The Collective Action Class Members routinely spent up to three hours each workday and up to 15 hours each workweek working at the Brockton Warehouse and traveling between the Brockton Warehouse and Weatherization Job Sites.  Cmpt., at ¶¶ 276, 301 & 302.

Advantage did not use an automated time clock to track the time worked by the Collective Action Class Members, and instead required the Collective Action Class Members to manually complete time cards that were maintained at the Brockton Warehouse.  Cmpt., at ¶ 270; Amaral Decl., at ¶ 27; Silveira Decl., at ¶ 26; Santos Decl., at ¶ 26; Weaver Decl., at ¶ 26; Collins Decl., at ¶ 26.   Supervisors Joe Lambalot and Brian Machado instructed the Collective Action Class Members that they would generally only be paid for work installing weatherproofing at Weatherization Job Sites, typically from 8 a.m. until 4:30 p.m. (minus a half-hour lunch break), and that they should not write any additional time on their time cards.  Cmpt., at ¶¶ 34–38; Amaral Decl., at ¶¶ 28 & 29; Silveira Decl., at ¶¶ 27 & 28; Santos Decl., at ¶¶ 27 & 28; Weaver Decl., at ¶¶ 27 & 28; Collins Decl., at ¶¶ 27 & 28; see also U.S. Department of Labor Report ("DOL Report") ("Employees were instructed not to put any hours on their time sheets other than the actual hours worked at each job site").[6]  To emphasize this point, Advantage itself issued a memorandum to its employees ("Advantage Memorandum") stating: "To clarify, field employees are paid upon entering the jobsite (i.e., a residence or multi-family project site).  Compensation typically starts at 8:00 am and work finishes at 4:30 pm … ." Advantage Memorandum, p. 1.[7]  Additionally, the DOL Report exposes Defendants' intention to continue its practice of refusing to pay Collective Action Class Members for work prior to and after their work at Weatherization Job Sites.  See DOL Report, p. 4 & 8 (with respect to Advantages' practice of failing to pay overtime

---

[6] The U.S. Department of Labor Report on Advantage's pay practices is attached as Exhibit F hereto.

[7] The Advantage Memorandum is attached as Exhibit G hereto.

6

compensation "for pre and post shift work performed by employees at the warehouse," Advantage "stated that they will not be changing any of their practices … .").

As a result, the Collective Action Class Members routinely (i) did not receive pay for hours worked prior to 8 a.m. or after 4:30 p.m.; (ii) worked over 40 hours during a seven-day workweek; and (iii) did not receive overtime pay calculated at a rate of 150% of their regular hourly rate of pay for time they worked in excess of 40 hours during a seven-day workweek.  Cmpt., at 21–27; 47–268; 276–287; 299–311; Amaral Decl., at ¶¶ 31 & 32; Silveira Decl., at ¶¶ 29 & 30; Santos Decl., at ¶¶ 30 & 31; Weaver Decl., at ¶¶ 29 & 30; Collins Decl., at ¶¶ 29 & 30.

Finally, Amaral and each of the Opt-In Plaintiffs estimates that, when each worked at Advantage, there were, on average, about 50 similarly-situated hourly field employees working for Defendants out of the Brockton location subject to the very same pay practices described above.  Amaral Decl., at ¶ 33; Silveira Decl., at ¶ 31; Santos Decl., at ¶ 32; Weaver Decl., at ¶ 31; Collins Decl., at ¶ 31.

### III.   ARGUMENT

#### A.   *Compensable Overtime Work Under the FLSA*

The FLSA requires covered employers to pay all non-exempt employees one and a half times their regular rate for time worked in excess of 40 hours per week.  29 U.S.C. § 207.  Here, the time the Collective Action Class Members spent working at the Brockton Warehouse and traveling between the Brockton Warehouse and Weatherization Job Sites was compensable work time under the FLSA.  First, during such time, all Collective Action Class Members engaged in "physical or mental exertion . . . controlled or required by the employer and pursued necessarily and primarily for the benefit of the

7

employer . . . ."[8]  Tenn. Coal. Iron & R.R. Co. v. Muscoda Local, 321 U.S. 590, 598 (1944).  Second, Defendants requested, suffered or permitted all Collective Action Class Members to perform such work.  See 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time").  Third, pursuant to the continuous workday principle, time an employee spends "between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked."  29 C.F.R. § 790.6(a).

Accordingly, Defendants violated the statutory rights of the Collective Action Class Members under the FLSA by failing to pay them overtime compensation for time they spent working for Defendants' benefit at the Brockton Warehouse and traveling between the Brockton Warehouse and Weatherization Job Sites to the extent such time was in excess of 40 hours of work in a week.

### B.  *Conditional Certification and Facilitation of Notice Under the FLSA*

Section 16(b) of the FLSA specifically allows private civil actions to be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Employees similarly situated to the named plaintiff must "opt-in" to the lawsuit to become part of the collective action by filing with the court a written consent to join the action.  29 U.S.C. § 216(b).  The statute of limitations on the FLSA claims of a similarly-situated employee is not tolled until the employee files the written consent with the court.  29 U.S.C. § 256(b).

---

[8] Defendant Kelly is an "employer" under the FLSA.  29 U.S.C. § 203(d); Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 (1st Cir. 2007) (finding company president personally liable for FLSA violations because he was "the president of the corporation, and he had ultimate control over the business's day-to-day operations.").  Mr. Kelly is himself jointly and severally liable for the FLSA liability at issue in this suit.  See id.

Given the requirement that each plaintiff file a written consent to join the FLSA lawsuit and given the fact that the statute of limitations is not tolled until such consent is filed, apprising potential plaintiffs of their right to join the lawsuit in a timely manner is imperative. Hoffman-La Roche Inc. v Sperling, 493 U.S. 165, 170 (1989) (stating the benefits of a § 216(b) collective action "depend[] on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."); Poreda v. Cascade, 532 F. Supp. 2d 234, 241 (D. Mass. 2008) (recognizing that notice should be given to the collective action members since their "rights [under the FLSA] may expire"). The First Circuit's two-tiered approach to FLSA collective action certification, discussed below, promotes timely notice to potential opt-in plaintiffs by allowing conditional certification and court facilitation of notice at an early stage of litigation prior to the completion of discovery. See Wise v. Patriot Resorts Corp., No. 04-30091, 2006 U.S. Dist. LEXIS 97992, at *3-4 (D. Mass. Feb. 15, 2006) (recognizing that, in order to alert potential parties to the pendency of the action, courts permit conditional certification under a fairly lenient standard prior to the completion of discovery). This Court has a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Hoffman-La Roche, 493 U.S. at 171.

The two-tiered approach involves a conditional certification inquiry at an early stage, with potential decertification at a later stage. At this point, the court determines whether the plaintiff and the potential class are similarly situated based only on minimal evidence, such as pleadings and any affidavits submitted to the court. Trezvant v. Fid. Emplr. Servs. Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006). The court does not

9

examine the merits of the plaintiff's FLSA claims or make any findings of fact or credibility determinations with respect to evidence presented by the parties at this early stage.  See id.; Kane v. Gage Merch. Servs., 138 F. Supp. 2d 212, 215 (D. Mass. 2001). In fact, courts in the First Circuit have consistently held that, at the initial conditional certification stage, "Plaintiffs' burden of proving that putative class members are similarly situated is 'fairly lenient,' typically resulting in conditional certifications of the representative class."  Norceide v. Cambridge Health Alliance, 814 F. Supp. 2d 17, 32 (D. Mass. 2011) (quoting Trezvant, 434 F. Supp. 2d at 43); see also Wise, 2006 U.S. Dist. LEXIS 97992, at *3-4.

As noted above, a finding that the plaintiff and the potential class are similarly situated at this first stage allows the court to conditionally certify the case and facilitate timely notice of the pending action to the proposed collective action class members.  See Hoffman-La Roche Inc., 493 U.S. at 169; Kane, 138 F. Supp. 2d at 214; see also, e.g., Litz v. Saint Consulting Grp., Inc., No. 11-10693, 2012 U.S. Dist. LEXIS 20586, 2012 WL 549057, at *6 (D. Mass. Feb. 17, 2012) (granting conditional certification and ordering parties to confer regarding proposed notice); Poreda, 532 F. Supp. 2d at 241 (approving proposed notice and requiring defendant to provide identifying information regarding all potential FLSA class members).

### C. *Legal Standards for "Similarly Situated" Inquiry*

Incorporating the "fairly lenient" standard noted above, in order for a plaintiff to demonstrate that he is similarly situated to the proposed collective action class members for purposes of conditional certification, the plaintiff need only "make[] a modest factual showing or assert[] substantial allegations that the putative class members were together

10

the victims of a single decision, policy, or plan that violated the law." Davis v. Footbridge Eng'g Servs., LLC, No. 09-cv-11133, 2010 U.S. Dist. LEXIS 106523, at *1 (D. Mass. Oct. 5, 2010) (quoting Trezvant, 434 F. Supp. 2d at 43) (emphasis in original). A plaintiff satisfies this requirement by putting forth "some evidence that the legal claims and factual characteristics of the putative class … are similar." Trezvant, 434 F. Supp. 2d at 44.

Courts consider a variety of factors in assessing the similarity of the legal claims and factual characteristics of a plaintiff and the putative class. Similarity in the job functions of, and pay provisions affecting, the plaintiff and putative class members weigh in favor of certification. See Lagasse v. Flextronics Am., LLC, No. 11-445, 2012 U.S. Dist. LEXIS 86343, at *15-16 (D.R.I. June 1, 2012) (focusing on whether employees have similar [not identical] job functions and pay provisions); Litz, No. 11-10693, 2012 U.S. Dist. LEXIS 20586, at *2 (D. Mass. Feb. 17, 2012) (granting conditional certification where employees had same general job descriptions, duties and terms of employment, billed time on an hourly basis, and received similar training and directives from management); Poreda, 532 F. Supp. 2d at 240–241 (emphasizing that each proposed class member is "an hourly employee who is paid on a semi-monthly basis in a manner similar to how Plaintiff is paid").

Although not required for certification, Courts also consider the extent to which employees worked in the same location, were in the same department, and had common supervisors. See, e.g., Wise, 2006 U.S. Dist. LEXIS 97992, at *4; compare, e.g., Burns v. City of Holyoke, No. 12-30003, 2012 U.S. Dist. LEXIS 108856, at *6-11 (D. Mass. Aug. 3, 2012) (in denying conditional certification, emphasized that class members had

11

diverse job positions, locations, departments, and supervisors). A "manageable" class size also weighs in favor of certification. See Poreda, 532 F. Supp. 2d at 241 (indicating that court should inquire as to whether a manageable case size exists); Kane, 138 F.Supp. 2d at 212 (granting conditional certification where a class involved approximately 50 – 100 employees).

### D.    *Plaintiff's FLSA Collective Action Should be Conditionally Certified*

This Court should conditionally certify Plaintiff's collective action for failure to pay required wages under the FLSA. Plaintiff easily satisfies the "fairly lenient" burden of demonstrating that the proposed class of workers are sufficiently similarly situated to justify conditional certification of the proposed class as well as the issuance of notice thereto.

First and foremost, the Complaint and attached declarations of Amaral and the four Opt-In Plaintiffs (collectively "Declarations") make clear that "the putative class members were together the victims of a single decision, policy, or plan that violated the law." See Trezvant, 434 F. Supp. 2d at 43. Defendants followed a policy and practice of willfully (i) failing to designate as compensable the time Collective Action Class Members spent working and traveling prior to and after their weatherproofing work at Weatherization Job Sites and (ii) failing to compensate the Collective Action Class Members at a rate of one and half times their regular rate for such time they worked in excess of 40 hours per week. Cmpt., at ¶¶ 21–27; 276–287; 299–311.

Specifically, the Collective Action Class Members together were routinely required to report to the Brockton Warehouse at the beginning of each workday at a time between approximately 6 a.m. and 7 a.m. (depending on how far away the

12

Weatherization Job Site was), obtain their assignments, gather materials and equipment needed for the day's weatherproofing work, and load such materials and equipment into Advantage vehicles. Cmpt., at ¶ 22; Amaral Decl., at ¶¶ 14–17; Silveira Decl., at ¶¶ 13–16; Santos Decl., at ¶¶ 13–16; Weaver Decl., at ¶¶ 13–16; Collins Decl., at ¶¶ 13–16. The Collective Action Class Members then all had to routinely travel in Advantage vehicles to various Weatherization Job Sites around Massachusetts, as either drivers or passengers, with the goal of arriving at the job site at 8:00 a.m. Cmpt., at ¶ 22; Amaral Decl., at ¶¶ 18 & 19; Silveira Decl., at ¶¶ 17 & 18; Santos Decl., at ¶¶ 17 & 18; Weaver Decl., at ¶¶ 17 & 18; Collins Decl., at ¶¶ 17 & 18. Some job sites were as much as an hour away. After completing their weatherproofing installation work and loading the Advantage vehicles with materials and supplies, the Collective Action Class Members had to routinely travel back from the Weatherization Job Site to the Brockton Warehouse in the Advantage vehicles, as either drivers or passengers. Cmpt., at ¶ 25; Amaral Decl., at ¶¶ 22 & 23; Silveira Decl., at ¶¶ 21 & 22; Santos Decl., at ¶¶ 21 & 22; Weaver Decl., at ¶¶ 21 & 22; Collins Decl., at ¶¶ 21 & 22. Upon arrival, the Collective Action Class Members routinely had to secure equipment in specific areas in the warehouse (including parking the company vehicles, storing the vehicle keys and camera equipment in the office, bringing the insulation tanks into the warehouse when the weather was cold, and/or placing the two-way radios back on chargers) prior to departing in their own vehicles. Cmpt., at ¶ 25; Amaral Decl., at ¶¶ 24 & 25; Silveira Decl., at ¶¶ 23 & 24; Santos Decl., at ¶¶ 23 & 24; Weaver Decl., at ¶¶ 23 & 24; Collins Decl., at ¶¶ 23 & 24. The Collective Action Class Members routinely spent up to three hours each workday and up to 15 hours each workweek working at the Brockton Warehouse and traveling

between the Brockton Warehouse and Weatherization Job Sites.  Cmpt., at ¶¶ 276, 301 & 302.  Including the time they spent working at the Brockton Warehouse and traveling between the Brockton Warehouse and Weatherization Job Sites, the Collective Action Class Members regularly worked over 40 hours a week.  Cmpt., at ¶¶ 47–279, 282; Amaral Decl., at ¶¶ 31 & 32; Silveira Decl., at ¶¶ 28 & 29; Santos Decl., at ¶¶ 29 & 30; Weaver Decl., at ¶¶ 28 & 29; Collins Decl., at ¶¶ 28 & 29.

However, Advantage supervisors instructed the Collective Action Class Members together to not include on their time cards as time worked the time they spent at the Brockton Warehouse or traveling between the Brockton Warehouse and Weatherization Job Sites in Advantage vehicles.  Cmpt., at ¶¶ 34–38; Amaral Decl., at ¶¶ 28–30; Silveira Decl., at ¶¶ 27 & 28; Santos Decl., at ¶¶ 27–29; Weaver Decl., at ¶¶ 27 & 28; Collins Decl., at ¶¶ 27 & 28; see also Advantage Memorandum, p. 1; DOL Report, p. 4.

Accordingly, the Collective Action Class Members were "together the victims" of Defendants' policy and practice of failing to adequately pay overtime compensation for their compensable work and travel time prior to and after their weatherproofing installation work at Weatherization Job Sites in violation of the FLSA.  See Trezvant, 434 F. Supp. at 43; Cmpt., at ¶¶ 276–287; 302–306.  As the illegality of this policy and practice, which applied to all Collective Action Class Members, is at the heart of this case, the legal claims of the Collective Action class Members are clearly similar.  See Trezvant, 434 F. Supp. 2d at 44 (showing of similar legal claims by plaintiff and proposed class weighs in favor of conditional certification).

The Complaint and the Declarations also indicate that the Collective Action Class Members performed similar job functions.  See, e.g., Litz, 2012 U.S. Dist. LEXIS 20586,

14

at *2 (granting conditional certification based, in part, on similar job functions of proposed class).  At the Brockton Warehouse, the Collective Action Class Members all routinely obtained their job assignments; gathered materials and equipment; and loaded/unloaded the Advantage vehicles.  Cmpt., at ¶¶ 22 & 25; Amaral Decl., at ¶¶ 16 & 17; Silveira Decl., at ¶¶ 15 & 16; Santos Decl., at ¶¶ 15 & 16; Weaver Decl., at ¶¶ 15 & 16; Collins Decl., at ¶¶ 15 & 16.  At Weatherization Job Sites, the Collective Action Class Members all performed similar manual labor tasks involved in weatherproofing buildings.  Amaral Decl., at ¶¶ 6, 20 & 21; Silveira Decl., at ¶¶ 5, 19 & 20; Santos Decl., at ¶¶ 5, 19 & 20; Weaver Decl., at ¶¶ 5, 19 & 20; Collins Decl., at ¶¶ 5, 19 & 20.

The Collective Action Class Members were also all subject to the same pay policies.  See, e.g., Poreda, 532 F. Supp. 2d at 240–241 (similarity of pay provisions weighs in favor of conditional certification).  They were all paid on an hourly basis.  Amaral Decl., at ¶¶ 12 & 13; Silveira Decl., at ¶¶ 11 & 12; Santos Decl., at ¶¶ 11 & 12; Weaver Decl., at ¶¶ 11 & 12; Collins Decl., at ¶¶ 11 & 12.  They all manually completed time cards maintained at the Brockton Warehouse location.  Amaral Decl., at ¶ 27; Silveira Decl., at ¶ 26; Santos Decl., at ¶ 26; Weaver Decl., at ¶ 26; Collins Decl., at ¶ 26.  They all were instructed to not include as compensable work time the time they worked at the Brockton Warehouse or spent traveling between the Brockton Warehouse and Weatherization Job Sites.  Cmpt., at ¶¶ 34–38; Amaral Decl., at ¶¶ 28–30; Silveira Decl., at ¶¶ 27 & 28; Santos Decl., at ¶¶ 27–29; Weaver Decl., at ¶¶ 27 & 28; Collins Decl., at ¶¶ 27 & 28; see also Advantage Memorandum, p. 1; DOL Report, p. 4.

Plaintiff and the Collective Action Class Members also all worked out of the same Brockton location, worked as field employees, and reported to the same supervisors,

including Joe Lambalot and Brian Machado.  Amaral Decl., at ¶¶ 5, 6, 9–11; Silveira Decl., at ¶¶ 4 , 5, 8–10; Santos Decl., at ¶¶ 4, 5, 8–10; Weaver Decl., at ¶¶ 4, 5, 8–10; Collins Decl., at ¶¶ 4, 5, 8–10; see e.g., Wise, 2006 U.S. Dist. LEXIS 97992, at *4 (similarities in work location, division, and position weigh in favor of  conditional certification).

Additionally, the Declarations indicate that the size of the class involving the Collective Action Class Members is particularly manageable.  Although, without the benefit of discovery at this stage, Plaintiff does not know the exact number of putative Collective Action Class Members, Amaral and each Opt-In Plaintiff estimate that there were about 50 similarly-situated employees working out of Advantage's Brockton location during their tenure at Advantage.  Amaral Decl., at ¶ 33; Silveira Decl., at ¶ 31; Santos Decl., at ¶ 32; Weaver Decl., at ¶ 31; Collins Decl., at ¶ 31.  Accordingly, taking into account turnover and hiring during the relevant class time period, Plaintiff estimates that there are approximately 50 to 100 potential Collective Action Class Members, a clearly manageable class.  See, e.g. Kane, 138 F.Supp. 2d at 212 (conditionally certifying a class of 50 to 100 individuals).  Plaintiff asks this Court to make a preliminary finding that the class is similarly-situated to justify conditional certification and court-supervised notice.

## IV. CONCLUSION

This Honorable Court should grant this Motion, pursuant to 29 U.S.C. §216(b), so that additional current and former similarly-situated Advantage employees can be promptly notified of their right to participate in this lawsuit.

WHEREFORE Plaintiff respectfully requests that this Honorable Court:

1. Conditionally certify this action as a collective action on behalf of a class of individuals defined as follows: "All persons who are or were employed by Advantage as a residential weatherization laborer (including as a weatherization worker, door and

window installer, crew chief, or energy installer), field employee, or other similarly-situated non-exempt hourly employee at any time from August 24, 2009 until the entry of judgment in this case";

      2.      Appoint Derek Amaral as the Collective Action representative;

      3.      Appoint Chip Muller, Esquire, as lead class counsel;

      4.      Order the Defendants to produce to Plaintiff's counsel within 14 days the name, last known address, alternate address (if any), personal email address, home telephone number and cell telephone numbers (if any) in Defendants' possession or control regarding each Collective Action Class Member;

      5.      Approve the proposed notice and consent form attached as <u>Exhibit H</u> hereto, and authorize Plaintiff and his Counsel to send it by mail and email to all Collective Action Class Members; and

      6.      Order Defendants to post the proposed notice and consent form in a conspicuous place in Defendants' Brockton Warehouse within seven days.

                          Respectfully submitted,
                            DEREK AMARAL
                            By his attorney,

                            /s/ Chip Muller
                            Chip Muller, Esq. (BBO # 672100)
                            Muller Law, LLC
                            155 South Main Street, Suite 101
                            Providence, RI 02903
                            (401) 256-5171 (ph)
                            (401) 256-5178 (fax)
                            chip@chipmuller.com

Dated: December 21, 2012

## **CERTIFICATION**

To:
James F. Grosso
O'Reilly, Grosso & Gross, P.C.
1671 Worcester Road, Suite 102
Framingham, MA  01701-5400

    I hereby certify that on this December 21, 2012, a copy of this document was served via this court's ECF filing system upon Defendants' counsel of record.

                                /s/ Chip Muller