UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEREK AMARAL, Individually and on behalf of all Current and Former Similarly-Situated Employees of Defendants,<br>    Plaintiff<br><br>v.<br><br>ADVANTAGE WEATHERIZATION, INC. And JOHN KELLY,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)    C.A. NO. 1:12-CV-11583<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' EMERGENCY MOTION TO ENFORCE SETTLEMENT
AGREEMENT AND TO ADJUDGE IN CONTEMPT OF COURT**

Plaintiff Derek Amaral and all similarly-situated current and former employees of Defendants submit this Memorandum of Law in Support of Plaintiffs' Emergency Motion to Enforce Settlement Agreement and to Adjudge in Contempt of Court. The parties reached a fair, reasonable, and adequate settlement, as documented in the Settlement and Stipulation Agreement attached as <u>Exhibit A</u> hereto ("Settlement Agreement"). The Settlement Agreement received this Court's preliminary approval on July 31, 2014. Dkt. #131 (granting Plaintiffs' Assented-to Motion for Class Certification, Appointment of Class Representative and Class Counsel, Preliminary Review of Settlement, Authorization of Distribution of Notice, and Setting Date for Final Fairness Hearing). Since, however, Defendants John Kelly and Advantage Weatherization, Inc. ("AWI"), have not followed the clear terms of the Settlement Agreement, by failing to fully fund the Settlement Escrow Account as promised. Defendants' actions and omissions constitute a material breach of the settlement agreement, constitute contempt of this Court's orders,

jeopardize payments to Plaintiffs, and jeopardize settlement of this case as preliminarily approved by this Court.

## I.     FACTUAL AND LEGAL BACKGROUND

Defendant AWI is a Massachusetts company that specialized in construction, weatherproofing, and retrofitting insulation in existing homes and multi-family complexes from 2010 until early 2014.  AWI ceased operations by early 2014.  At the time AWI entered into the Settlement Agreement, its solvency was unclear.

Plaintiff Derek Amaral filed the Complaint in this action on August 23, 2012, as a collective action under the Fair Labor Standards Act ("FLSA") and a class action for unpaid wages, unpaid overtime, and retaliatory discharge under Massachusetts wage and hour laws, M.G.L. Chapter 159 §§ 148 & 150 and M.G.L. Chapter 151 §§ 1A & 1B.

On January 30, 2013, the Court approved the parties' joint stipulation defining the conditional class, agreeing to the terms of the notice informing potential collective action class members of the FLSA action ("Collective Action Notice").[1] Dkt. # 33.  On February 14, 2013, Plaintiffs' counsel mailed the Collective Action Notice to approximately 173 then-current and former employees of Defendants whom Defendants identified as putative collective action class members.  A total of 45 employees submitted consent-to-join forms to opt in to the FLSA action.[2]

After extensive discovery, Mr. Amaral and Defendants participated in a private mediation

---

[1] This definition of the Collective Action Class was approved by the Court:  Every person who is employed or ever was employed by Advantage Weatherization, Inc. for two work weeks or more as a residential weatherization laborer, weatherization worker, door and window installer, crew chief, energy installer, field employee, or other similarly-situated non-exempt employee at any time after February 1, 2010.  Dkt. # 30, Stipulation Regarding Scope of Collective Action.

[2] A number of these individuals signed declarations, filed with the Court, indicating that AWI supervisors had coerced them and other employees to not join the lawsuit.  See Dkts. ## 91, 92, 98 & 99.

with mediator, Maria C. Walsh, Esq., of JAMS in Boston on February 13, 2014. After over 12 hours of negotiation, the parties reached and signed a tentative settlement agreement, pending the Court's approval of its terms. On May 15, 2014, the parties entered into the final Settlement Agreement memorializing their agreement in great detail.

On July 31, 2014, this Court preliminarily approved the settlement class and preliminarily approved the settlement agreement. Dkt. #131. The parties engaged the services of a third-party claims administrator ("Claims Administrator") to act as claims administrator for the settlement. Id. at § IV.E.3. In August, the Claims Administrator mailed each of the 155 eligible Class Members a Notice of Settlement, a Consent to Join Settlement and Release of Claims Form, and an Election of Opt-Out of Settlement and Class Action Form approved by this Court. The deadline for Plaintiffs to file objections, Election to Opt-Out of the Settlement Forms, and Consent to Join Settlement and Release of Claims Forms has passed. According to a report from the Claims Administrator, 82 consent forms, no objections, and only two Opt-Out forms have been received by the Claims Administrator as of October 8, 2014. See Affidavit of Stacy Roe, ¶¶ 8-11, attached as Exhibit B hereto.

This Court's hearing on Plaintiffs' forthcoming motion for final approval of the settlement is set for October 27, 2014. Dkt #130.

## II.   KEY TERMS OF THE SETTLEMENT

The Settlement Agreement provides that, if approved, Defendants will pay $500,000 to resolve in their entirety the class and collective action claims as set forth in the Complaint. Settlement Agreement, §§ I & IV.C.1. The Settlement Agreement requires Defendants Kelly and AWI to deposit $500,000 into a Settlement Escrow Account maintained by the Claims Administrator within 60 days of this Court's order preliminarily approving the settlement notice

to the class.  Id. § IV.E.5.  This Court's order preliminarily approving the settlement notice to the class was entered on July 31, 2014.  Dkt. #131.  60 days from July 31, 2014, is September 29, 2014.

As of October 8, 2014, Defendants had only deposited $275,000 into the Settlement Escrow Account.  Exhibit B, ¶ 12.  Despite repeated demands, Defendants have been unwilling and/or unable to guarantee immediate compliance with their requirement to deposit a total of $500,000 into the Settlement Escrow Account as required by the Settlement Agreement.

### III.     LEGAL ARGUMENT

The First Circuit describes a settlement negotiated "under the eyes of the court" as a "most solemn undertaking . . . ."  Warner v. Rossignol, 513 F.2d 678, 682 (1st Cir. 1975).  This Court "retains an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court."  Dankese v. Def. Logistics Agency, 693 F.2d 13, 16 (1st Cir. 1982).  "[W]here the parties, acting in good faith, settle a controversy, the courts will enforce the compromise without regard to what the result might have been had the parties chosen to litigate."  Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 852-53 (1st Cir. 1987) (quoting Terrain Enterprises, Inc. v. Western Casualty and Surety Co., 774 F.2d 1320, 1321 (5th Cir. 1985), cert. denied, 475 U.S. 1121 (1986)).  Each Defendant is jointly and severally liable for the entire sum of the settlement amount.  Lemus v. Manhattan Car Wash, Inc.,No. 06 Civ. 15486, 2010 U.S. Dist. LEXIS 33263, at *28-29 (S.D.N.Y. Mar. 25, 2010) ("Absent words distinguishing the liabilities of the defendants, there is no basis for imputing to the parties an intention to hold each defendant liable only for some portion of the settlement sum. We have no choice but to read it as imposing joint liability.").

Here, it is undisputed and undisputable that Defendants have not followed a key provision of the Settlement Agreement by their failure to fund the Settlement Escrow Account as they promised they would do.  <u>See</u> <u>Exhibit B</u>, ¶ 12.  This Court must protect the relief it ordered for the Plaintiffs by finding Defendants jointly and severally liable for their material and brazen breach of the Settlement Agreement.  This Court must protect the integrity of this proceeding and Defendants' "solemn undertaking" by finding Defendants in contempt of the spirit and letter of this Court's order preliminarily approving the parties' settlement.  This Court must order Defendants to make sufficient deposits into the Settlement Escrow Account to ensure that it is immediately funded and prior to the hearing on final approval scheduled for October 27, 2014.

**IV.  CONCLUSION**

Wherefore, Plaintiffs ask this Honorable Court to:

1. Hold an emergency hearing on this Motion <u>prior to</u> October 27, 2014;

2. Find Defendants in material breach of the Settlement Agreement;

3. Find Defendants in contempt of this Court's July 31, 2014 order;

4. Order Defendants to ensure that they immediately deposit sufficient funds to ensure that the total amount of money they've deposited into the Settlement Escrow Account totals $500,000; and

5. Award Plaintiffs the fees and costs expended to draft and argue this motion.

        For the PLAINTIFFS,
        By their Attorney,

        */s/* Chip Muller

        Chip Muller, Esq. (BBO #672100)
        MULLER LAW, LLC
        155 South Main Street, Suite 101
        Providence, RI 02903
        (401) 256-5171 (Tel)
        (401) 256-5178 (Fax)
        chip@chipmuller.com

Respectfully filed this 9th day of October, 2014.

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document, filed through the CM/ECF system, will be electronically sent to the registered participants below on October 9, 2014.

    James F. Grosso, Esq.
    Miranda Jones, Esq.
    O'Reilly, Grosso & Gross, P.C.
    1661 Worcester Road, Suite 403
    Framingham, MA 01701-5400
    jgrosso@ogglaw.com

        /s/ Chip Muller
        Chip Muller