UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DEREK AMARAL, individually and on behalf of all other current and former similarly-situated employees of Defendants,

   Plaintiff,

vs.

ADVANTAGE WEATHERIZATION, INC. and JOHN KELLY,

   Defendants.

Civil Action No.: 1:12-cv-11583-LTS

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS IN CONNECTION WITH PLAINTIFFS' EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT**

  Attorneys for Plaintiffs submit this Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees and Costs in Connection with Plaintiffs' Emergency Motion to Enforce Settlement Agreement and to Adjudge in Contempt of Court. Defendants failed to comply with their joint and several obligation to timely transfer $500,000 into the settlement escrow account, an obligation about which Defendants have known since February, 13, 2014.[1] Defendants breached a clear and material term of the Stipulation and Settlement Agreement entered into by the parties, and preliminarily approved by order of this Court. Defendant Kelly readily admits that he understands his contractual and court-ordered obligation and that he is not in noncompliance with such obligations. See Doc. No. 134, Defendants' Opposition to Plaintiffs' Emergency Motion to Enforce Settlement Agreement and to Adjudge in Contempt of Court ("Defendants' Emergency Motion Opposition") at p. 2.

---

[1] Although Defendant Advantage Weatherization, Inc. ("AWI") and Defendant John Kelly have an agreement that each will pay half of the funds due under the Settlement and Stipulation Agreement, and Defendant AWI timely transferred $250,000 to the settlement escrow account, Defendants obligations to Plaintiffs are joint and several. Settlement Agreement at § IV.I.9.

As a result of such noncompliance, counsel for the Plaintiffs ("Class Counsel") was required to file an Emergency Motion to Enforce Settlement Agreement and to Adjudge in Contempt of Court ("Emergency Motion") to coerce Defendants' compliance. Only after Class Counsel threatened to file an emergency motion did Defendant Kelly place any money in the settlement escrow account, and only after Class Counsel filed the Emergency Motion did Kelly propose a plan to pay the outstanding amount owed to the fund. At the hearing on the Emergency Motion, the Court warned Defendant Kelly that he would face consequences if he did not abide by the proposed plan and fully fund the Settlement Escrow Account.

Class Counsel was required to devote valuable time preparing and arguing the motion and to spend money on costs associated with the motion. The Court should exercise its inherent powers to require the noncomplying parties to pay the attorneys' fees and costs resulting solely from their clear and blatant breach of Settlement Agreement and the Courts' order preliminarily approving the same.

## I. FACTUAL BACKGROUND

### A. Defendant Kelly Has Known About His Obligation To Pay For Over Seven Months

On February 13, 2014, the parties reached and signed a tentative settlement agreement, pending the Court's approval of its terms. One of the key terms was that Defendants Advantage Weatherization, Inc. ("AWI") and John Kelly would collectively place $500,000 into an escrow fund that would be used, upon approval of the settlement by the court, to pay individual class members. Plaintiffs specifically required that the funds would be placed into an escrow account prior to final approval of the court. Defendants specifically agreed that they would do so. As a result of the tentative settlement, Plaintiffs agreed to place a hold on their litigation.

Three months later, on May 15, 2014, the parties entered into the final Stipulation and Settlement Agreement memorializing their agreement in great detail ("Settlement Agreement"), a copy of which was attached as <u>Exhibit A</u> to the Memorandum of Law in Support of the Emergency Motion (Doc. No. 132-2).  One of the key provisions of the Settlement Agreement is that Defendants agreed to deposit $500,000, collectively, into the settlement escrow account maintained by the claims administrator ("Settlement Escrow Account") within 60 days of this Court's order preliminarily approving the settlement notice to the class.  Settlement Agreement at § IV.E.5.

Two and a half months later, this Court preliminarily approved the Settlement Agreement and authorized the settlement process by an order on July 31, 2014.  (Doc. No. 131, granting Plaintiffs' Assented-to Motion for Class Certification, Appointment of Class Representative and Class Counsel, Preliminary Review of Settlement, Authorization of Distribution of Notice, and Setting Date for Final Fairness Hearing ("Plaintiffs' Assented-to Motion for Preliminary Approval of Settlement")).  Defendants were therefore obligated to transfer $500,000 into the Settlement Escrow Account by September 29, 2014.  Settlement Agreement, § IV.E.5.

### B. Defendant Kelly Failed to Comply with the Court Order Authorizing the Settlement Process and Only Began Trying to Fulfill His Obligations AFTER Class Counsel Took Action

Since the Court's order in July, Defendants have failed to comply.  Although at the time of his breach Defendant Kelly was clearly aware that he was violating Court-authorized settlement process, he failed to inform Class Counsel of his non-compliance.  Instead, Class Counsel learned of the breach only after seeking confirmation from Defendants' counsel on October 1, 2014, that Defendants had fully funded the Settlement Escrow Account.  Defendants' counsel responded the same day that, although Mr. Kelly was aware of his obligation, he had not

paid any money into the fund.

After first learning of the non-payment by Mr. Kelly, Class Counsel demanded, through Defendants' counsel, that Mr. Kelly pay the full amount outstanding immediately. However, Mr. Kelly did not respond to such demands. Only after Class Counsel emailed a written warning that Plaintiffs would file an emergency motion with the Court seeking enforcement of the Settlement Agreement, and <u>seeking attorneys' fees and costs</u> in connection with such motion, did Mr. Kelly begin to pay any money into the Settlement Escrow Fund. However, although Defendant Kelly had had over seven months to prepare to pay his obligation pursuant to the settlement process, Mr. Kelly transferred only 10% of what he owed, and he provided no explanation or promise regarding the remaining 90%. In another attempt to resolve the matter without resort to an emergency motion, Class Counsel made one final inquiry of Defendants' counsel to obtain assurance that Mr. Kelly would cure his breach. No such response was forthcoming.

As a result, and with the October 27th Final Fairness Hearing looming, Class Counsel had no choice but to enlist the power of the Court to enforce the Settlement Agreement and the Court's order regarding the same. Class Counsel thus filed the Emergency Motion on October 9, 2014, in an effort to ensure that Defendants fully funded the Settlement Escrow Account so that the class members who joined the lawsuit would be able to receive their allocations pursuant to the settlement being overseen by the Court. Only after Class Counsel took action by filing the Emergency Motion did Mr. Kelly finally propose a plan pursuant to which he would fully fund the Settlement Fund. However, even then, other than simply stating in his opposition memorandum that he did not have the money to transfer to the fund due to the infancy of his new venture, Defendant Kelly did not provide the Court any evidence of his inability to pay or reason for his noncompliance.

4

II. **THE COURT SHOULD EXERCISE ITS INHERENT POWER TO REQUIRE DEFENDANTS TO PAY CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS RESULTING SOLELY FROM DEFENDANTS' NONCOMPLIANCE WITH THE SETTLEMENT AGREEMENT AND COURT ORDER**

   A.   **Attorneys' Fees and Costs As Civil Contempt Sanction**

The Court has the authority to hold a party in civil contempt upon clear and convincing evidence that the party violated an unambiguous order of the Court.  See NLRB v. Flores, No.07-2003, 2012 U.S. App. LEXIS 26981, at *18 (1st Cir. Aug. 6, 2012) (Special Master's Report and Recommendation), adopted by 2013 U.S.App. LEXIS 14923 (1st Cir., Mar. 13, 2013); Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 77 (1st Cir. 2002).  Civil contempt sanctions are remedial in nature, designed to coerce compliance and make whole the parties harmed by the contemnor's noncompliance.  McComb v. Jacksonville Paper, Co., 336 U.S. 187, 191 (1949); Flores, 2012 U.S. App. LEXIS 26981, at *23 (quoting United States v. Prof'l Air Traffic Controllers Org. (PATCO) Local 202, 678 F.2d 1, 4 (1st Cir. 1982)).  The contemnor's violation need not be willful and the party seeking an order of civil contempt need not prove that the contemnor violated the court's order in bad faith.  McComb, 336 U.S. at 191; Flores, 2012 U.S. App. LEXIS 26981, at *19.  Additionally, "[e]ven where a court declines to issue a citation of contempt for violations of the court's orders, attorneys' fees and costs may be recoverable where the bringing of the action should have been unnecessary" and was necessitated solely by the contemnor's defiance of a court order.  Casale v. Kelly, 710 F. Supp. 2d 347, 359 (S.D.N.Y. 2010).

Further, while a contemnor is entitled to raise his present inability to comply with the court order he is charged with violating as a defense to civil contempt, the heavy burden of production related to such defense lies with the defendant.  United States v. Rylander, 460 U.S.

752, 757 (1983) (rejecting defendant's "ex parte affidavit and uncross-examined testimony" as meeting the burden of production); Flores, 2012 U.S. App. LEXIS 26981, at *23-24 ("This burden is not light; courts have required defendants to prove impossibility 'plainly and unmistakably,' and 'categorically and in detail.'") (citations omitted).  Self-induced inability, including where the contemnor's own actions were responsible for his subsequent inability to comply, and "some" or even "substantial" efforts to comply have been deemed inadequate defenses.  See Eck v. Dodge Chem. Co., 950 F.2d 798, 803 (1st Cir. 1991).

The award of attorneys' fees and costs is a sanction commonly granted in civil contempt orders as part of a court's remedial arsenal to make the non-breaching parties whole.  See, e.g., Yaworsky v. New Leaf Solutions, LLC., No. 13-cv-100, 2014 U.S. Dist. LEXIS 149911, at * 6-7 (W.D. Pa. Oct. 22, 2014) (finding defendant in civil contempt for failing to comply with Court order requiring payment pursuant to settlement agreement and awarding, inter alia, attorneys' fees and costs in connection with enforcement of settlement agreement); Dystar Corp. v. Canto,1 F. Supp. 2d 48, 58-60 (D. Mass.1997) (citing cases); In re Microbiological Sciences, C.A. No. 92-0255L, 1993 U.S. Dist. LEXIS 19547, at * 7 (D.R.I. Aug. 13, 1993); In re Galleria Enterprises of Maryland, Ltd., 102 B.R. 472, 476-477 (U.S. Bkr. Md. June 27, 1989).  Although the First Circuit has not ruled on the matter, the majority of circuits agree that a finding of willfulness is not necessary for the award of attorneys' fees necessitated to pursue the civil contempt action.  See Dystar Corp., 1 F. Supp. 2d at 58-59 (citing cases).

Here, it is clear that Defendants are in violation of the unambiguous Court order granting Plaintiffs' Assented-to Motion for Preliminary Approval of Settlement and thereby authorizing the settlement process.  (Doc. No. 131.)  Thus, Defendants were required to transfer $500,000 into the Settlement Escrow Fund by September 29, 2014.  Kelly admitted in his opposition to the

Emergency Motion, and through his attorney at the hearing on the motion, that he is not in compliance with the Settlement Agreement or the Court's order.  Defendants' Emergency Opposition Motion, at p. 2. Further, although Defendant Kelly claimed in his opposition to the Emergency Motion that he simply does not have the funds to comply, such statement does not satisfy, or even come close to satisfying, his burden of production necessary for him to rely on the impossibility defense. See Flores, 2012 U.S. App. LEXIS 26981, at *23-24.

Further, as noted above, the majority of circuits do not require a finding of willfulness for a civil contempt award of attorneys' fees and costs.  However, even if a showing of willfulness were required, the Defendants' actions here qualify.  Defendant Kelly induced Plaintiffs to place a hold on their litigation against him in February, 2013, by agreeing to pay money into a settlement escrow account prior to the Court's final approval of the settlement.  Defendant Kelly, not Plaintiffs, knew his financial ability at the time to fulfill his obligations.  Defendant Kelly had ample time to comply with his obligations.  Further, as the September 29, 2014 deadline for funds transfer neared, Defendant Kelly failed to notify Plaintiffs or this Court that he would not be able to comply with the Settlement Agreement and the Court-authorized settlement process. See Dystar Corp., 1 F. Supp. 2d at 60 (Defendants' failure to seek modification of order one factor indicating willful noncompliance).  Defendant Kelly failed to produce evidence that he was unable to meet his obligation and that his excuse was valid.  Defendant Kelly did not act until Class Counsel threatened legal action, and only after Class Counsel actually filed the Emergency Motion did Kelly propose a plan to pay off his obligation. Further, Defendant Kelly does not appear to appreciate that his actions will have a negative impact on others.  By causing a delay in the distribution of the Settlement Fund, Defendant Kelly is essentially borrowing the settlement funds from the Plaintiffs without their permission to fund his new business as he waits

7

for accounts receivables to be paid.  Defendant Kelly callously states that his proposed delay in funding the Settlement Escrow Account is insignificant, ignoring the impact the delay will have on the Plaintiffs, many of whom live paycheck to paycheck.[2]

Additionally, although AWI timely paid half of the $500,000 into the Settlement Escrow Account, as the company is jointly and severally liable to fully fund the Settlement Escrow Account and as it knew that the account was not fully funded, AWI should also be charged with civil contempt and liable for attorneys' fees and costs.  Among the parties here, AWI (which can later seek contribution or breach of contract remedies from Kelly), not the Plaintiffs, should shoulder the risk of late payment (or non-payment) by Defendant Kelly.  AWI should be held responsible for payment of both the full settlement fund amount and the attorneys' fees and costs required to coerce Defendants to comply with their settlement obligations.

### B. Defendants' Noncompliance Required Class Counsel to Devote Time and Money To Seek Compliance By Defendants

Class counsel devoted 12.3 hours to work related to the Emergency Motion, including discussions with counsel for Defendants and the claims administrator; legal research on topics including breaches of settlement agreements, noncompliance with court orders, and joint and several liability; drafting the Emergency Motion and Memorandum in Support thereof; and preparation for, travel in connection with, and attendance at the hearing on the Emergency Motion.  Declaration of Nancy Sheinberg, attached hereto as <u>Exhibit A</u>, at ¶¶ 4 & 5.  At the fair and reasonable rates of $350 and $275 per hour for Attorneys Muller and Sheinberg, respectively, Class Counsel's total attorneys' fees in connection with the Emergency Motion equal $3,742.50.  <u>Id.</u> at ¶ 6.  Class Counsel spent $156.16 in connection with the Emergency

---

[2] Defendant Kelly's behavior can also be characterized as bad faith, another reason for which the Court should grant the request for attorneys' fees and costs.  <u>See</u> <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45 (1991).

8

Motion on the fee for pro hac vice admission necessary for Attorney Sheinberg to argue the Emergency Motion on behalf of the Plaintiffs and travel expenses related to the hearing on the Emergency Motion. Id. at ¶ 7. Accordingly, Class Counsel's total attorneys' fees and costs arising from Defendants' noncompliance with the Settlement Agreement and this Court's order equaled $3,898.66. Id. at ¶ 8.

Such fees and costs were necessary and reasonable to seek compliance by Defendants of their obligations under the Settlement Agreement and this Court's order regarding the same. Plaintiffs and Class Counsel are entitled to an award of such reasonable attorneys' fees and costs incurred as a result of the noncompliance by the Defendants.

## CONCLUSION

As a result of Defendants failure to comply with the Settlement Agreement and the Court order regarding the same, Class Counsel was required to devote time and money seeking compliance. The noncomplying parties, not Plaintiffs and Class Counsel, should be responsible for the attorneys' fees and costs incurred.

For all of the foregoing reasons, Class Counsel respectfully requests this Court grant this motion for attorneys' fees and costs:

(i)  Finding Defendant Kelly and Defendant AWI each jointly and severally liable to Class Counsel for an award of attorneys' fees in the amount of $3,742.50; and

(ii) Finding Defendant Kelly and Defendant AWI each jointly and severally liable to Plaintiffs for an award of costs in the amount of $156.16.

Respectfully submitted, this 27th day of October, 2014.

                        ATTORNEYS FOR PLAINTIFF,
                        DEREK AMARAL, individually and on behalf of all current and former similarly-situated employees of Defendants

                        /s/ Chip Muller
                        Chip Muller (BBO #672100)
                        Nancy Sheinberg (Admitted Pro Hac Vice)
                        MULLER LAW, LLC
                        155 South Main Street, Suite 101
                        Providence, RI 02903
                        (401) 256-5171
                        chip@chipmuller.com
                        nancy@chipmuller.com

DATED: October 27, 2014

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through the CM/ECF system, will be electronically sent to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 27, 2014.

                        /s/ Chip Muller
                        Chip Muller